THE BOWERY SAVINGS BANK *v.* LAYMAN ET AL.

[No. 20,642. Filed February 5, 1968. No petition for rehearing filed.]

*J. Michael Frost, Christopher Kirages,* and *Dutton, Kappes & Overman,* all of Indianapolis, for appellant.

*Harold W. Jones,* and *Smith & Jones,* of Indianapolis, for appellees.

SMITH, J.—This action is brought by the appellant against the appellees for the foreclosure of a mortgage on real estate.

The issues were formed upon the appellant's complaint to foreclose a real estate mortgage and an application for the appointment of a receiver. The complaint alleges that the appellees have defaulted on the terms and conditions of the real estate mortgage.

The appellees, James O. Layman and Ann L. Layman, husband and wife, appeared by counsel on July 7, 1965. The counsel for such appellees withdrew his appearance on November 24, 1965, after authorization by the court. Thereafter, such appellees were ruled to answer appellant's complaint on or before January 10, 1966; however, they failed to file any pleadings in this action.

The appellees, Robert G. Sharp and Josephine Sharp, husband and wife, failed to appear in this action after having been served with notice by publication.

The appellees, Stanley Selig and Dona Selig, husband and wife, trustees, filed an answer in compliance with Rule 1-3, denying therein any alleged default in complying with the terms and provisions of the real estate mortgage. Such appellees also filed a counterclaim for damages in two paragraphs: one paragraph alleges that appellant has wrongfully deprived

them of the use of the real estate, and the second paragraph alleges that the appellant has libeled and slandered them. The appellant filed an answer in two paragraphs to such counterclaim in compliance with Rule 1-3: one paragraph denies that appellant has wrongfully deprived such appellees of the use of the real estate, and the second paragraph denies that appellant has libeled or slandered them.

Trial was to the court without the intervention of a jury, and the court found in favor of the defendants-appellees and against the plaintiff-appellant on the issues joined in the complaint; and in favor of the defendant-appellant and against the plaintiffs-appellees on the issues joined in the counterclaim. The appellant filed a timely motion for a new trial, which the trial court overruled. A judgment was entered in accordance with the court's findings.

The appellant urges its Assignment of Error No. 1, that the trial court erred in overruling the bank's motion for a new trial, and urges the following:

"1. The decision of the Court is contrary to law."

To support this argument the appellant claims that the facts relating to the default on the mortgage, construed in the light most favorable to the appellees, are these: After taking title to the real estate subject to the bank's mortgage, the appellees made payments on the mortgage for approximately five years. That beginning with the payment due on December 1, 1964, the Seligs started making late payments. That the December 1 payment was not received by National Homes until February 5, 1965; and that the payments due on January 1 and February 1, 1965, were both received by National Homes on February 25, 1965. That on March 25, 1965, National Homes advised the Seligs in writing that they were excused from paying late charges for the January and February installments, but that future payments received after the fifteenth day of the month in which they were due would have

to include late charges or they would be returned for the inclusion of such charges. That the appellees were also advised in writing that the account was then delinquent for the March 1 payment and the late charge for March. That by check in the amount of $171.00 dated March 23, 1965, but not received by National Homes until early April, the appellees attempted to pay the March 1 installment on two mortgages, including the mortgage involved in this case. That the check was returned to the appellees with a letter explaining that the March and April 1 payments on both mortgages, as well as the late charges for March, were due and would have to be paid. That the letter also stated that the envelope in which the appellees had mailed the check showed that the check had been mailed to National Homes on March 31, 1965; that the check was dated March 23, 1965.

The record further discloses that the appellees replied to the letter received from National Homes on April 12, 1965, denying any obligation to pay late charges and refusing to pay the same.

In considering the question of default, we note that paragraph 3 of the mortgage provides in part as follows:

"Any deficiency in the amount of such aggregate monthly payment shall, unless made good by the Mortgagor prior to the due date of the next such payment, constitute an event of default under this mortgage."

Upon failure of the appellees to cure their default, the bank became entitled to accelerate the mortgage debt and foreclose pursuant to the provisions of the mortgage.

The appellees' partial tenders of arrears, consisting of single monthly payments, were not effective to prevent acceleration and subsequent foreclosure.

The appellees assert that even though the mortgage clearly provides for late charges, their admitted failure to pay such charges did not furnish a basis for acceleration of the debt or foreclosure of the mortgage. They contend that the

only "event of default" under the mortgage is the failure to make good any deficiency in an "aggregate monthly payment", *which does not include late charges, within the grace period allowed for such payment.* However, the failure to make good any deficiency in an "aggregate monthly payment" within the grace period allowed for such payment is not the only event of default under the mortgage; it is merely *"an* event of default". The mortgage specifically provides that the debt may be accelerated and the mortgage foreclosed upon default in the performance of *any* covenant in the mortgage or note. The pertinent provision of the mortgage reads as follows:

> "11. If any default be made in the payment of the installments provided for in paragraph 3 hereof, *or in the performance of any other covenant in this mortgage or in the note secured hereby,* when the same is payable or the time of performance has arrived, as above provided, then all the remainder of the aforesaid principal sums with all arrearages of interest, and sums payable pursuant to the provisions hereof, shall, at the option of said Mortgagee, become immediately payable, and the Mortgagee shall have the "right to foreclose this mortgage, anything hereinbefore or in said note contained to the contrary notwithstanding, and any failure to exercise said option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default" (Emphasis supplied).

Under Burns' Indiana Statutes § 3-1810 (1946 Repl.), foreclosure is authorized consistent with the terms of the instant mortgage. The statute provides in pertinent part as follows:

> "When default is made in the performance of any condition contained in a mortgage, the mortgagee or his assigns may proceed . . . . to foreclose the equity of redemption contained in the mortgage."

It is contended by the appellees that the mortgage fixes no time for payment of late charges. The mortgage clearly provides that late charges assessed by the bank must be paid on the first day of the month. The pertinent provisions of the mortgage concerning late charges read as follows:

"3. He [the Mortgagor] will pay to the Mortgagee, together with, and in addition to, the monthly payments under the terms of the note secured hereby, *on the first day of each month* until the said note is fully paid:

. . . .

"(b) . . . . At mortgagee's option, Mortgagor will pay a 'late charge' not exceeding four per centum (4%) of any installment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments. . . ." (Emphasis supplied).

From the above discussion of the terms of the mortgage, it is clear that the trial court erred in refusing to find that there was a default on the mortgage. It is our opinion that such failure is reversible error.

Judgment reversed.

Cook, P. J., and Bierly and Pfaff, JJ., concur.

NOTE.—Reported in 233 N. E. 2d 492.