Marsha BRESSLER, Appellant–
Respondent Below,

v.

Lawrence BRESSLER, Appellee–
Petitioner Below.

No. 20A03-9204-CV-124.

Court of Appeals of Indiana,
Third District.

Oct. 26, 1992.

Patrick F. O'Leary, Yoder Ainlay Ulmer & Buckingham, Goshen, for appellant-respondent below.

William J. Cohen, Rebecca F. Butler, Elkhart, for appellee-petitioner below.

STATON, Judge.

Marsha (Bressler) Miller appeals the trial court's order distributing property in connection with the dissolution of her marriage to Lawrence Bressler. Marsha raises four issues for our review, which we consolidate into two and restate as follows:

1. Whether the trial court erred by finding that Marsha and Lawrence's antenuptial agreement applied in the event of their divorce?

2. Whether Lawrence's status as a creditor of a corporation was an asset that should have been included in the marital estate and, thus, subject to distribution?

We affirm in part, reverse in part, and remand.

Prior to their marriage on December 14, 1985, Lawrence and Marsha entered into an Antenuptial Settlement of Property Agreement ("agreement") that had been drafted by an attorney representing Lawrence. Attached to the agreement, and marked as Schedule A, was a list of Lawrence's premarital assets protected by the agreement.

Lawrence filed for dissolution of marriage on January 11, 1990. Thereafter, the trial court held a hearing to determine whether the antenuptial agreement would control the division of property in the dissolution action. Based on extrinsic evidence presented at the hearing, the trial court concluded the agreement governed the division of property.[1]

The case proceeded to trial on the issues related to property division. Giving full effect to the terms of the antenuptial agreement, the trial court awarded to Lawrence the proceeds from the sale of a home located at 6 Courtney Lane, the guns specifically enumerated in Schedule A of the agreement, and all of Lawrence's profit sharing plan from his former employer, Brooklyn Products, Inc., as provided in the agreement. The trial court rejected Marsha's claim to any assets remaining from money Lawrence received in settlement for a wrongful discharge claim he had filed against Brooklyn Products, as well as any interest Lawrence had in a new business, Quality Foam Design Corporation. Concluding that the remainder of the assets were marital property, the trial court divided them between Marsha and Lawrence, after giving due consideration to the factors listed in West's A.I.C. 31–1–11.5–11(c) (Supp.1992).[2]

1. The trial court's decision read as follows:

The Court, having reviewed the evidence presented herein, now finds that the testimony of the parties is such as to convince the Court that as a matter of law both parties understood the effect of the prenuptial agreement entered into. Specifically, the Court notes the Wife's testimony that she believed that when she signed the agreement that the Husband was protecting himself in case of a divorce. Considering all of the facts and circumstances, the Court finds that the division of marital assets in the dissolution of marriage is such that the same should be controlled by the prenuptial agreement. The Court would find that the prenuptial agreement is, therefore, valid to control all further proceedings....

Record, at 145.

2. IC 31–1–11.5–11(c) provides as follows:

The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to a final division of property

## I.

### Antenuptial Agreement

Marsha contends the trial court erred in concluding the agreement applied in the event of divorce. The first paragraph of the antenuptial agreement stated:

Husband and wife intend to marry each other soon, and it is agreed upon between the parties that after such marriage all the properties of any name or nature, real, personal or mixed, wherever they may be found, belonging to husband before marriage shall be considered property not subject to the rights of inheritance of his wife or subject to the laws of descent and distribution, and that this shall include all interest, rents, stocks, bonds, certificates of deposit, other like investments, savings accounts, checking account, which in time accrue or result in any manner from any increase in value of said assets owned by the husband on the attached Schedule A prior to his marriage or to be collected for the use of the same in any way, which property shall remain forever his personal estate.

Record, at 81.

Marsha points out that the agreement mentioned nothing about applying in the event of divorce. Rather, the agreement provided that Marsha waives all rights she may have to Lawrence's premarital assets as surviving spouse under the laws of descent and distribution or inheritance. She argues that, because the agreement unambiguously contemplated the death of Lawrence, and not the divorce of the parties, the trial court was bound by its plain and ordinary meaning and should not have applied the agreement when dividing the property in this dissolution action. *See, Tate v. Secura Insurance* (1992), Ind., 587 N.E.2d 665, 669.

Lawrence argues the agreement was ambiguous with respect to whether it applied to divorce. He claims the final clause in paragraph number one, "which property shall remain forever his personal estate", makes it possible for the agreement to be interpreted as applying in the event of divorce.

The interpretation of a contract is primarily a question of law for the court, even if the instrument contains an ambiguity needing resolution. *Id.* at 668. Thus, on appeal, our standard of review is essentially the same as that employed by the trial court. *State Sec. Ins. Co. v. Ottinger* (1985), Ind.App., 487 N.E.2d 446, 447, *trans. denied.*

Antenuptial agreements are to be construed according to principles applicable to the construction of contracts generally. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1320, *reh. denied.* If the language of the instrument is unambiguous, the intent of the parties must be determined from its four corners; parol or extrinsic evidence is inadmissible to expand, vary or explain the instrument. *Turnpaugh v. Wolf* (1985), Ind.App., 482 N.E.2d 506, 508. Thus, if the terms of Marsha and Lawrence's agreement were not ambiguous, the trial court's consideration of extrinsic evidence to determine the intent of the parties was improper.

The terms of a contract are ambiguous only when reasonably intelligent persons would honestly differ as to the meaning of those terms. *Rose v. Rose* (1988), Ind.App., 526 N.E.2d 231, 236, *trans. denied.* "The meaning of [an instrument] may be said to be clear, when it fairly expresses an intention on a reasonable interpretation of the language used, *regardless of other possible intentions not apparent, but which must be reached through a forced construction* or circuitous reasoning." *Hauck v. Second National Bank of Richmond* (1972), 153 Ind. App. 245, 286 N.E.2d 852, 863, *trans. denied* (emphasis in original) (quoting *Wallace v. Cutsinger* (1917), 66 Ind.App. 185, 115 N.E. 789, *trans. denied* ). An instrument is not rendered ambiguous by the mere fact the parties disagree as to its proper construction. *Hauck, supra.* In determining whether an instrument is ambiguous, we must reference the whole instrument and final determination of the property rights of the parties.

strument rather than only individual clauses. *100 Center Development Co. v. Hacienda Mexican Restaurant, Inc.* (1989), Ind.App., 546 N.E.2d 1256, 1258, *reh. denied.*

Marsha and Lawrence's antenuptial agreement consisted of ten paragraphs and an addendum, none of which referred to property division in the event of divorce. Instead, the agreement continually referred to Marsha's relinquishment of rights as a surviving spouse under the laws of descent and distribution, and inheritance.[3] Similarly, the addendum is couched in terms of rights as a surviving spouse.[4]

We are not persuaded that the clause in the first paragraph stating that Lawrence's property "shall remain forever his personal estate" created an ambiguity as to whether the agreement was intended to apply in the event of divorce. Thus, it was improper for the trial court to consider extrinsic evidence of the parties' intent. We remand with instructions that the trial court include the following assets in the marital estate: the proceeds from 6 Courtney Lane,[5] the guns, any remaining assets from the wrongful discharge settlement, and Lawrence's profit sharing plan.

We note that on remand, the ultimate distribution may deviate little from the trial court's original order, as the trial court has broad discretion in effectuating a just and reasonable distribution of marital property pursuant to IC 31-1-11.5-11(c). *Livingston v. Livingston* (1992), Ind.App., 583 N.E.2d 1225, 1227. However, such distribution must be made independent of the antenuptial agreement.

---

**3.** For example, paragraph no. 8 provided as follows:

> Wife acknowledges that there has been no valuation of the 640 Class C Voting Stock of Brooklyn Products, Inc., of husband though an evaluation is in process. However, wife specifically understands and agrees that in consideration of the provisions herein made for her benefit, that she waives any rights, titles or interests she might have of whatever kind, nature or description including those rights of a surviving spouse under the laws of descent and distribution or inheritance.

> Wife further acknowledges that there exists a certain interim Stock Redemption Agreement, a copy of which is attached, and that it has been disclosed that said agreement will be amended or superseded and waives specifically any and all rights, title or interests thereto or any amendment or superseding agreement of whatever nature or description specifically including those rights of a surviving spouse under the laws of descent and distribution or by way of inheritance.

Record, at 83.

**4.** The addendum to the antenuptial agreement stated in relevant part:

> Husband and wife have simultaneously herewith exectued [sic] the Antenuptial Settlement of Property Agreement dated the 5th day of December, 1985, and husband specifically waives any and all rights, titles and interests which may result from or do result from, his marriage to wife, specifically including his rights of inheritance by virtue of the laws of descent and distribution, in that certain property located at 171 E. Lowry Drive, Brooklyn, Michigan 49230, which property is understood and intended by the parties hereto to remain the separate property of the wife.

Record, at 86.

**5.** Even if we were to find that the antenuptial agreement applied in the event of divorce, Lawrence would not be entitled to the proceeds from the sale of the real estate located at 6 Courtney Lane because the proceeds are not directly traceable to a premarital asset listed on Schedule A. The only real estate listed on Schedule A, 304 Riviera Drive, was sold before Lawrence and Marsha were married. With the proceeds, Lawrence bought a home at 146 Hawthorne Drive. Soon after Marsha and Lawrence were married, Lawrence presented to Marsha a deed naming himself and Marsha as joint tenants to the property at 146 Hawthorne Drive. Lawrence and Marsha sold the Hawthorne Drive property on August 2, 1986 and used the proceeds to purchase a home at 272 Riviera Drive. The property at 272 Riviera Drive was sold on June 8, 1987 and the proceeds were eventually used to purchase the home located at 6 Courtney Lane. Prior to filing for divorce, Lawrence sold the property located at 6 Courtney Lane, realizing $42,250.00 from the sale.

"[P]roperty which is separate at its inception may lose its separate characteristic if it is not kept segregated." *Kemp v. Kemp* (1985), Ind.App., 485 N.E.2d 663, 667. When Lawrence gave Marsha an interest as joint tenant of the 146 Hawthorne Drive property, he effectively altered the status of the property so that it became part of the marital pot. Because they are directly traceable to the 146 Hawthorne Drive property, the proceeds from the sale of 6 Courtney Lane are also included in the marital pot and should be disposed of as provided in IC 31-1-11.5-11(c).

## II.

### *Interest in the Corporation*

 During his marriage to Marsha, Lawrence received $49,750.00 from Brooklyn Products in settlement for his wrongful discharge claim, and approximately $87,000.00 in settlement for his stock and retirement benefits at Brooklyn Products. From these assets, Lawrence invested $110,000.00 into a new business, Quality Foam Design Corporation: $10,000 was used to purchase stock and $100,000 was a loan to Quality Foam, evidenced by promissory notes. When Lawrence filed for divorce, he owned 50% of the stock of Quality Foam, a business showing a net loss and owning no assets. Marsha contends the trial court erred in not awarding her a share of Lawrence's interest in Quality Foam.

 In its order, the trial court denied Marsha a share of Lawrence's rights in Quality Foam because the business was worth a negative sum. The trial court has broad discretion in ascertaining the value of property in a dissolution action. We will not disturb its valuation of property absent an abuse of that discretion. *Nill v. Nill* (1992), Ind.App., 584 N.E.2d 602, 603.

At trial, Quality Foam's accountant testified that the business had no net worth, had never made a profit, and had a loss in retained earnings of nearly $521,000.00. Based on the uncontroverted evidence identified above, we cannot say the trial court abused its discretion in valuing Lawrence's interest in Quality Foam at zero.

 Because all marital property must be disposed of in one final settlement in the divorce proceeding, the trial court must have a fixed, presently ascertainable value for the assets. *Murphy v. Murphy* (1987), Ind.App., 510 N.E.2d 235, 237. Future earnings are not marital property subject to division, although they may be considered as a factor in determining the just and reasonable division of assets under IC 31-1-11.5-11(c). *See Moore v. Moore* (1985), Ind.App., 482 N.E.2d 1176, 1180. Given the financial condition of the business, Lawrence's interest in Quality Foam is speculative and thus, not properly includable in the marital pot. *See, Murphy, supra.* Because there is nothing of value to distribute with respect to Lawrence's interest in Quality Foam, we affirm the trial court's decision declining to award Marsha a share of that interest.

Marsha asserts the trial court erred when it reduced her entitlement to assets by setting off her interest in them against the negative value of Quality Foam. A careful reading of the record reveals the trial court made no such set-off; rather it was indicating what it would do if the antenuptial agreement did not apply.[6]

 Because Lawrence is not personally liable for any of the debts of Quality Foam, on remand, the trial court may not offset Marsha's interest in the marital assets with a share of the negative value of Quality Foam. *See Waitt v. Waitt* (1977), 172 Ind.App. 357, 360 N.E.2d 268, 275.

We affirm in part, reverse in part, and remand.

HOFFMAN and BARTEAU, JJ., concur.

---

6. In its order, the trial court stated:
    While the Wife has pressed various claims to assets, she seems unwilling to accept any of the responsibility. If the Court were to negate the prenuptial agreement and to divide the assets, the Court would find that the negative value to be distributed to both parties, would be well in excess of One Hundred and Fifty Thousand Dollars ($150,000) apiece. The Wife seems to ignore these facts. In fact, in reviewing the Wife's testimony, the Court finds that the Wife's position has consistently been that what is hers is hers, what is positive from the marriage is hers and the Husband's to divide, and what is negative is the Husband's. That is not the law in the State of Indiana.
    Record, at 68.