Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT:

**JAY P. KENNEDY**
**STEVEN E. RUNYAN**
Kroger, Gardis & Regas, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

**BRADLEY J. BUCHHEIT**
Hostetler & Kowalik, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FIRST FINANCIAL BANK, NATIONAL ASSOCIATION, HAMILTON, OHIO, AS SUCCESSOR IN INTEREST TO FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER OF IRWIN UNION BANK AND TRUST COMPANY, | ) ) ) ) ) ) ) ) | |
| Appellant/Plaintiff/ Counterclaim Defendant, | ) ) ) | |
| vs. | ) ) | No. 41A05-1209-MF-474 |
| FRED L. PARIS and MICHELLE S. PARIS, | ) ) ) | |
| Appellees/Defendants/ Counterclaim Plaintiffs. | ) ) | |

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Jack A. Tandy, Special Judge
Cause No. 41D03-1101-MF-12

**March 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

On June 10, 2009, Fred and Michelle Paris failed to make a final balloon payment as required by a Promissory Note signed by the Parises in 2004 in exchange for a loan. On January 6, 2011, First Financial Bank initiated foreclosure proceedings alleging that the Parises had defaulted on their obligations under the Promissory Note. The Parises subsequently filed a counterclaim against First Financial. On January 13, 2012, First Financial filed motions for summary judgment on both its claim against the Parises and the Parises' counterclaim against it. On March 30, 2012, the trial court granted summary judgment in favor of First Financial with respect to the Parises' counterclaim but denied summary judgment on First Financial's claim against the Parises. Following a bench trial, the trial court determined that the Promissory Note was ambiguous with regard to its maturity date, and, based on the doctrines of promissory estoppel and unjust enrichment, issued judgment providing for repayment of the outstanding indebtedness, concluding in 2024.

First Financial raises numerous issues on appeal, one of which we find dispositive. Because we conclude that the language of the Promissory Note was unambiguous with respect to its maturity date, we conclude that First Financial was entitled to summary judgment on its claim against the Parises. Accordingly, we reverse the trial court's order denying First Financial's motion for summary judgment and remand to the trial court for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

First Financial Bank ("FFB") is a successor in interest to Irwin Union Bank. On June 21, 2004, in exchange for a loan from Irwin Union in the amount of $528,000, Fred and

Michelle Paris signed a Promissory Note (the "Note"). Pursuant to the terms of the Note, the Parises agreed to make fifty-nine monthly payments of $4,107.50 and one final balloon payment estimated at $459,053.36. This balloon payment was due upon maturity of the loan on June 10, 2009. As security for the Note, the Parises' executed and delivered two mortgages on properties owned by the Parises. The Parises ultimately failed to make the final balloon payment on June 10, 2009.

On January 6, 2011, FFB initiated foreclosure proceedings, alleging that the Parises had defaulted on their obligations under the Note, and sought to foreclose on the mortgages. The Parises subsequently filed a counterclaim in which they alleged fraud by an agent of Irwin Union. In making this counterclaim, the Parises asserted that they had entered into a subsequent oral agreement with an agent of Irwin Union that the term of the loan would be twenty years. On January 13, 2012, FFB filed motions for summary judgment relating both to its claim against the Parises and the Parises' counterclaim against FFB. In support of its motion, FFB designated a signed declaration of the Parises' remaining indebtedness, the Note and mortgages executed by the Parises, and a declaration of attorney's fees.

On March 30, 2012, the trial court granted summary judgment in favor of FFB with respect to the Parises' counterclaim against FFB but denied summary judgment on FFB's claim against the Parises, finding that the Note was ambiguous with respect to the Note's maturity date. Following a bench trial, the trial court again determined that the Note was ambiguous with respect to the Note's maturity date, and, based on the doctrines of

3

promissory estoppel and unjust enrichment, issued judgment providing for repayment of the outstanding indebtedness, concluding in 2024.  This appeal follows.

## DISCUSSION AND DECISION

### Whether the Trial Court Erred in Denying
### FFB's Motion for Summary Judgment

On appeal, FFB challenges the trial court's order denying its motion for summary judgment on its claim that the Parises had defaulted on the Note and, as a result, FFB was entitled to foreclose on the mortgages executed by the Parises.  When reviewing a grant or denial of summary judgment our well-settled standard of review is the same as it is for the trial court:  whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law.  *Ind. Univ. Med. Ctr., Riley Hosp. for Children v. Logan*, 728 N.E.2d 855, 858 (Ind. 2000).  Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Id.*  All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party.  *Id.*  The review of a summary judgment motion is limited to those materials designated to the trial court.  *Rood v. Mobile Lithotripter of Ind., Ltd.*, 844 N.E.2d 502, 507 (Ind. Ct. App. 2006).

Indiana Code section 32-30-10-3 provides that "if a mortgagor [borrower] defaults in the performance of any condition contained in a mortgage, the mortgagee [lender] or the mortgagee's assigns may proceed in the circuit court of the county where the real estate is located to foreclose the equity of redemption contained in the mortgage."  *See also Gainer*

4

*Bank v. Cosmo. Nat'l Bank of Chicago*, 577 N.E.2d 992, 993 (Ind. 1991). Where a mortgage provides that the mortgagor will pay the mortgage indebtedness, the mortgagors bind themselves to pay the debts secured by the mortgage. *Creech v. LaPorte Prod. Credit Ass'n*, 419 N.E.2d 1008, 1011 (Ind. Ct. App. 1981). Moreover, the holder of the mortgage becomes entitled to foreclose pursuant to the provisions of the mortgage upon default by the mortgagor. *See Bowery Sav. Bank v. Layman*, 142 Ind. App. 170, 173, 233 N.E.2d 492, 494 (1968) (providing that the bank became entitled to accelerate the mortgage debt and foreclose pursuant to the provisions of the mortgage upon failure of the mortgagors to cure their debt). Evidence of the terms of the promissory note and mortgage, default by the mortgagor, and the amount of the mortgage debt is sufficient to support an entry of judgment and foreclosure. *See Creech*, 419 N.E.2d at 1012 (concluding that the evidence was sufficient to support a judgment for foreclosure when the mortgagee presented evidence of the demand note, the mortgage, default by the mortgagor, and the remaining debt).

In arguing that the trial court erred in denying its motion for summary judgment, FFB contends that the trial court erroneously determined that the Note was ambiguous with respect to the date upon which it matured. FFB claims that the clear language contained in the Note is unambiguous with respect to the date upon which it matured. Upon review, we employ the principles of contract interpretation in order to determine whether the Note was ambiguous. "The interpretation of a contract is primarily a question of law for the court." *Bressler v. Bressler*, 601 N.E.2d 392, 395 (Ind. Ct. App. 1992). As such, on appeal, our standard of review is essentially the same as that employed by the trial court. *Id*.

5

"'The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties, as expressed in the language used, and to give effect to that intention, if it can be done consistent with legal principles.'" *Evansville-Vanderburgh Sch. Corp. v. Moll*, 264 Ind. 356, 362, 344 N.E.2d 831, 837 (1976) (quoting *Walb Constr. Co. v. Chipman*, 202 Ind. 434, 441, 175 N.E. 132, 134 (1931)). Thus, "[w]hen construing the meaning of a contract, our primary task is to determine and effectuate the intent of the parties." *Ryan v. Lawyers Title Ins. Corp.*, 959 N.E.2d 870, 875 (Ind. Ct. App. 2011). "First, we must determine whether the language of the contract is ambiguous." *Id*.

"Where the terms of a contract are clear the court merely applies its provisions." *Turnpaugh v. Wolf*, 482 N.E.2d 506, 508 (Ind. Ct. App. 1985). "Unambiguous language is conclusive upon the parties to the contract and the courts." *Id*. "In the absence of an ambiguity it is not within the function of the judiciary to look outside of the instrument to get at the intention of the parties." *Moll*, 264 Ind. at 362, 344 N.E.2d at 837. As such, "[i]f the language of the instrument is unambiguous, the intent of the parties must be determined from its four corners," *Turnpaugh*, 482 N.E.2d at 508, and "[w]e will not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions." *Kessel v. State Auto. Mut. Ins. Co.*, 871 N.E.2d 335, 337 (Ind. Ct. App. 2007).

"The terms of a contract are ambiguous only when reasonably intelligent persons would honestly differ as to the meaning of those terms." *Bressler*, 601 N.E.2d at 395. "'The meaning of [an instrument] may be said to be clear, when it fairly expresses an intention on a reasonable interpretation of the language used, regardless of other possible intentions not

6

apparent, but which must be reached through a forced construction or circuitous reasoning.'"

 *Id*. (quoting *Hauck v. Second Nat'l Bank of Richmond*, 153 Ind. App. 245, 286 N.E.2d 852, 863 (1972), *trans. denied*).  "An instrument is not rendered ambiguous by the mere fact the parties disagree as to its proper construction." *Id*.  "In determining whether an instrument is ambiguous, we must reference the whole instrument rather than only individual clauses." *Id*. at 395-96.  As such,

> in construing a contract we presume that all provisions were included for a purpose, and if possible we reconcile seemingly conflicting provisions to give effect to all provisions.  *Magee v. Garry-Magee*, 833 N.E.2d 1083, 1092 (Ind. Ct. App. 2005).   We must accept an interpretation of the contract that harmonizes all the various parts so that no provision is deemed to conflict with, to be repugnant to, or to neutralize any other provision.  *Id*.  When a contract contains general and specific provisions relating to the same subject, the specific provision controls.  *Id*.  "It is well settled that when interpreting a contract, specific terms control over general terms."  *Burkhart Advertising, Inc. v. City of Fort Wayne*, 918 N.E.2d 628, 634 (Ind. Ct. App. 2009) (citing *GPI at Danville Crossing, L.P. v. West Cent. Conservancy Dist.*, 867 N.E.2d 645, 651 (Ind. Ct. App. 2007), *reh'g denied*, *trans. denied*), *trans. denied*.

*Ryan*, 959 N.E.2d at 875.

In the instant matter, the Note explicitly states that the Note had a maturity date of June 10, 2009.  Appellant's App. p. 65.  Additional relevant portions of the Note read as follows:

> PAYMENT.  Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in 59 regular payments of $4,107.50 each and one irregular last payment estimated at $459,053.36.  Borrower's first payment is due July 10, 2004, and all subsequent payments are due on the same day of each month after that.  Borrower's final payment will be due on June 10, 2009, and will be for all principal and all accrued interest not yet paid.
> * * * *
> VARIABLE INTEREST RATE.  The interest rate on this Note is subject to change from time to time ….  The interest rate change will not occur more

7

often than each five years on the anniversary date in the note.

**\* \* \* \***

GENERAL PROVISIONS.… All such parties agree that Lender may renew or extend (repeatedly and for any length of time time) this loan or release any party or guarantor or collateral, or impair, fail to realize upon or perfect Lender's security in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone.

Appellant's App. pp. 65-66. In addition, both of the mortgages that were executed as security for the Note and listed in the Note as collateral for the loan stated that the "maturity date of the Note is June 10, 2009." Appellant's App. pp. 79, 94.

Despite the explicit language indicating that the Note matured on June 10, 2009, the trial court found that the Note was ambiguous with respect to the maturity date because the Note also provided that any potential change in the interest rate would "not occur more often than each five years on the anniversary date in the note." The trial court believed that the language relating to any potential change in the interest rate suggested that the length of time contemplated by the Note must be more than five years, and, as such, the Note could not mature on June 10, 2009. In finding the Note ambiguous, the trial court did not appear to consider the language contained in the "General Provisions" section of the Note which provided that the Note could potentially be extended beyond the initial term.

Again, upon reviewing a contract, we must read a contract as a whole and, in doing so, attempt to harmonize and reconcile any seemingly conflicting provisions. *See Ryan*, 959 N.E.2d at 875. The language of the Note at issue in this case is unambiguous with respect to its maturity date. The specific language in the Note relating to the maturity date explicitly lists the maturity date as June 10, 2009. This specific language controls over any potentially

8

conflicting general language contained in the Note. *See Eskew v. Cornett*, 744 N.E.2d 954, 957 (Ind. Ct. App. 2001) (providing that when a contract contains general and specific provisions relating to the same subject, the specific provision controls). Moreover, the general language allowing for an interest rate change each five years can be harmonized with the specific language relating to the maturity date when read together with the general provision providing that the term of the loan could potentially be extended beyond the initial term. Any extension longer than thirty days would render the term of the loan longer than five years, and could potentially result in a change in the interest rate.

Because the Note was unambiguous with respect to the maturity date, the trial court erred in denying summary judgment in favor of FFB because the designated evidence demonstrated that the Parises had defaulted on their loan obligations and that FFB was entitled to judgment as a matter of law.[1] As such, we reverse the trial court's order denying FFB's motion for summary judgment and remand to the trial court with instructions for the court to enter summary judgment in favor of FFB. Upon remand, the trial court should also consider whether FFB is entitled to recover attorney's fees.

The judgment of the trial court is reversed and the matter is remanded for further proceedings consistent with this decision.

RILEY, J., and BROWN, J., concur.

---

[1] Having concluded that the trial court erred in denying FFB's motion for summary judgment, we need not consider FFB's remaining challenges relating to whether the final judgment entered by the trial court following trial was erroneous.