Thomas MAGEE, Appellant–Petitioner,

v.

Connie R. GARRY–MAGEE, Appellee–Respondent.

No. 71A03–0411–CV–498.

Court of Appeals of Indiana.

Sept. 12, 2005.

---

---

Jay Lauer, South Bend, for Appellant.

Aladean M. Derose, South Bend, for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Thomas Magee ("Husband") appeals and Connie R. Garry–Magee ("Wife") cross-appeals from a decree of marriage dissolution. Both contest the amount awarded Wife for her interest in Husband's property under their Prenuptial Agreement (the "Agreement"). Wife also raises a second issue on cross-appeal, namely, whether the trial court erred when it held that the Agreement required her to file a joint 2002 income tax return and ordered her to reimburse Husband for the additional tax liability he incurred from her insistence that the parties file individual returns for that year.

We affirm in part, reverse in part, and remand with instructions.[1]

### FACTS AND PROCEDURAL HISTORY

Husband and Wife executed their Prenuptial Agreement on March 8, 2001, and March 9, 2001, respectively, and the couple married on March 10, 2001. Wife's separate property is listed in an exhibit to the Agreement and includes a brokerage account at Charles Schwab. Wife's tax loss carryover of approximately $52,000, which accumulated from stocks traded in the Schwab account, is not separately listed on the exhibit. Husband's Culver real estate (the "Culver real estate") is listed in an exhibit to the Agreement as his separate property.

The Agreement provides for disposition of the parties' separate and joint property upon termination of the marriage. The parties agreed to retain ownership and control over their respective property and waived any claim to or interest in the separate property of the other. But paragraph nine of the Agreement contains an exception, namely, that Wife would acquire an interest in the Culver real estate that would increase over time. The paragraph further provided that any of four triggering events would toll the accrual of her interest. The accrual of Wife's interest in the Culver real estate would cease upon the earliest of (1) the parties' estrangement, (2) their legal separation, (3) the dissolution of their marriage, or (4) the Husband's death.

Under the Agreement the parties were also to file joint income tax returns during the marriage if filing jointly would "produce the smallest amount of aggregate tax." Appellant's App. at 37. At Wife's insistence, and on the recommendation of her accountant, the parties filed separate tax returns for 2002, which resulted in a greater aggregate tax than if the parties had filed jointly. As a result of the separate filings, Wife retained her tax loss carryover from the Schwab account, and Husband paid more taxes.

On March 24, 2003, Husband filed a petition for dissolution. The final hearing was held on August 16, 2004, and the decree of dissolution ("Decree") was entered August 19, 2004. Applying paragraph nine of the Agreement, the dissolution court held that the date of dissolution was the valuation date for Wife's interest in the Culver real estate, and it also ordered Wife to reimburse Husband for the additional tax liability he incurred because she had insisted that they file separate tax returns in 2002. Husband appeals, and Wife cross-appeals.

---

1. We grant Wife's Motion to Submit, and For Court to Accept, Table of Authorities Omitted from Appellee's Brief and Cross–Appeal.

## DISCUSSION AND DECISION

 Husband contends that the dissolution court erred when it construed the term "estrangement" as used in paragraph nine of the Agreement and that, as a result, the court used the latest, rather than the earliest, of two possible triggering events to calculate Wife's interest in the Culver real estate. Antenuptial agreements are legal contracts by which parties entering into a marriage attempt to settle their respective interests in the property of the other during the course of the marriage and upon its termination. *Bass v. Bass*, 779 N.E.2d 582, 592 (Ind.Ct.App. 2002) (citations omitted). Antenuptial agreements are to be construed according to principles applicable to the construction of contracts generally, *Bass*, 779 N.E.2d at 592, and they are to be liberally construed to carry out the parties' intent. *Beatty v. Beatty*, 555 N.E.2d 184 (Ind.Ct.App.1990). The interpretation of a contract is primarily a question of law for the court, even if the instrument contains an ambiguity needing resolution. *Bass*, 779 N.E.2d at 592. Thus, on appeal, our standard of review is essentially the same as that employed by the trial court. *Id.*

 Unless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning. *Rodriguez v. Rodriguez*, 818 N.E.2d 993, 995–96 (Ind. Ct.App.2004), *trans. denied* (citation omitted). Where the terms of a contract are clear and unambiguous, the terms are conclusive and we will not construe the contract or look at extrinsic evidence. *Id.* If there is an ambiguity, parol evidence is allowed in to clarify the ambiguity. *DeBoer v. DeBoer*, 669 N.E.2d 415, 422 (Ind. Ct.App.1996) (citation omitted); *McLinden v. Coco*, 765 N.E.2d 606, 611 (Ind.Ct.App. 2002). The terms of a contract are not ambiguous merely because controversy exists between the parties concerning the proper interpretation of terms. *Id.*

Here, the Agreement modifies the operation and effect of Indiana Code Section 31–15–7–4, which provides that property owned by either party before the marriage is included in the marital pot subject to division in dissolution proceedings, by designating whether one party may share in the distribution of the other's property. The Agreement also modifies the rule of law that a trial court may select a valuation date any time between the date a petition for dissolution is filed and the date a decree of dissolution is entered. *See Reese v. Reese*, 671 N.E.2d 187, 191 (Ind. Ct.App.1996), *trans. denied.* Specifically, paragraph nine provides that the valuation date, which tolls the accrual of Wife's interest in the Culver real estate, shall be the earliest of four potential triggering events: the parties' estrangement, their legal separation, the dissolution of their marriage, or Husband's death.

Husband and Wife could not agree on the date of their estrangement. Husband testified that they became estranged on December 31, 2002, but Wife claimed that their estrangement did not occur until June of 2003. Neither could the parties agree on the meaning of "estrangement." Finding that "[n]either party testified credibly that he or she had anything particular in mind regarding the meaning of 'estrangement' in the Agreement," the dissolution court construed "estrangement" to mean a circumstance in which the "parties' affections waned and they determined to separate physically *but determined not to institute legal proceedings*." *See* Appellant's App. at 13 (emphasis added). The court concluded: "The inclusion of the category "estrangement" evidences a recognition on the part of the parties that they may agree to alter their marital union, and divide up their assets as provided in that Agreement, but not terminate their legal status as spouses." Appellant's App. at 14.

The court's definition of "estrangement" altered the Agreement. There is nothing in the text of the Agreement or the testimony of the parties to support the "determined not to institute legal proceedings" qualification that the court attached to the definition. The court recited dictionary definitions of "estrangement" and found that estrangement would include circumstances where the parties' affections waned and they determined to separate physically. But the court then added a provision not apparent on the face of the Agreement and clearly not contemplated by the parties. The court found that an estrangement occurs only when the parties have determined not to institute legal proceedings, in other words, that the estrangement provision in the Agreement does not apply at all if legal proceedings are initiated.

A court may not add a term or condition to a contract. *See W. Ohio Pizza, Inc. v. Clark Oil & Refining Corp.,* 704 N.E.2d 1086, 1091 (Ind.Ct.App.1999), *trans. denied.* And a court must give meaning to all words in a contract. *Modern Photo Offset Supply v. Woodfield Group,* 663 N.E.2d 547, 550 (Ind.Ct.App. 1996), *trans. denied.* Here, the dissolution court's definition of estrangement contravened the parties' intent under the plain language of paragraph nine, which was to toll the accrual period upon the occurrence of the earliest marriage-altering event.

Having determined that the dissolution court's definition of "estrangement" was erroneous, we next consider what the term means as used in this context. "Estrangement" as used in the Agreement is ambiguous and, therefore, requires construction. To construe the term we consider the parties' intent in using the term, which was to toll the accrual of Wife's interest in the Culver real estate upon the occurrence of the earliest triggering event. The common understanding of estrangement is a diversion or waning of affection, and this meaning has generally been adopted in cases that involved an estrangement of the parties. In a marriage, which is a voluntary relationship, the diversion or waning of affection of only one party is sufficient for there to be estrangement. *See* Ind.Code § 31–15–2–3 (the conviction or insanity of either party is a sufficient basis for dissolution of the marriage); *see also* American Heritage Dictionary 629 (3d Ed.1996); *Daniels v. Colonial Ins. Co.,* 314 Ark. 49, 857 S.W.2d 162, 165 (1993) ("estranged has different levels of meaning and does not necessarily equate to divorce, separation, or life in a different household"); *Milne v. Milne,* 383 Pa.Super. 177, 556 A.2d 854, 861 (1989) (objective factors in determining parent-child estrangement are (1) whether the parties are in contact and (2) the nature and quality of the parent-child relationship).

Both the dissolution court and this court must apply the triggering events clause as it is written, even if the draftsmanship is flawed. There is no Indiana case on point. We conclude that "estrangement" under the Agreement means a diversion or waning of affections that may or may not be accompanied by a physical separation, regardless of whether legal proceedings have been initiated.[2] This definition com-

---

**2.** In addition to stating the grounds for a dissolution of marriage, the Dissolution of Marriage Act requires that a petitioner state "the date on which the parties separated." Ind.Code § 31–15–2–5(2)(C). The date of final separation is the date of filing of the petition for dissolution. *Staller v. Staller,* 570 N.E.2d 1328, 1331 (Ind.Ct.App.1991). However, the date of separation governs only the includability in the marital pot of separately and jointly acquired assets. *See* Ind.Code §§ 31–9–2–46, 31–15–7–4; *see also Bartrom v. Adjustment Bureau, Inc.,* 618 N.E.2d 1, 8 (Ind. 1993). Here, the issue presented does not concern the controlling date for a division of property under the statute but the definition of "estrangement" as used in the Agreement.

ports with the dictionary definition, the case law in other jurisdictions, and, above all, the intent of the parties as expressed in their Agreement. And while the parties could not agree on the date of their estrangement or the meaning of "estrangement," they did agree at the final hearing that estrangement was the triggering event. *See* Appellant's Supp.App. at 4 (Wife contends that June 14, 2003, the date she vacated the marital residence, is the date of the triggering event for purposes of paragraph nine); Transcript at 123 (Wife testified that she understood "estrangement" to mean physical separation); Transcript at 15 (Husband testified that December 31, 2002, was the date of estrangement and the triggering event for purposes of paragraph nine).

 Estrangement is the first step in the process of dissolving a marriage and occurs before a petition for dissolution of marriage is filed. Indeed, the filing of a verified petition for dissolution based on an irretrievable breakdown of marriage is conclusive proof of estrangement. *See* Ind.Code §§ 31–15–2–3, –5. The dissolution court reasoned that "estrangement" is meant to describe circumstances in which the parties are separated but their legal status as a married couple remains unaltered. But an estrangement does not end when legal proceedings begin. Indeed, an estrangement continues during a de facto or legal separation and until a decree of marriage dissolution is entered. Unless a dissolution petitioner has perjured himself, as a matter of law, an estrangement occurs no later than the date the petition for dissolution alleging an irretrievable breakdown of the marriage is filed. Except where death is the triggering event, an

estrangement will always occur before a legal separation or dissolution of marriage.

 Here, Husband alleged an irretrievable breakdown of the marriage in his verified petition for dissolution.[3] Therefore, Husband's verified declaration that there had been an irretrievable breakdown of the marriage without a reasonable possibility of reconciliation established, as a matter of law, that the parties were estranged no later than March 24, 2003, the date he filed the verified petition for dissolution. It was the parties' intent that the triggering event that occurred first-in-time would determine the valuation date of Wife's interest in the Culver real estate. Because the date of estrangement precedes the date of dissolution, the date used by the dissolution court, we conclude that for purposes of paragraph nine of the Agreement, the trial court erred when it used the date the Decree was entered to toll the accrual of Wife's interest in the Culver real estate. Rather, Wife's interest was tolled no later than March 24, 2003, the date the petition was filed.[4]

As noted, the parties dispute when their estrangement first occurred, which is a question of fact. The dissolution court avoided having to make that determination when it held that an estrangement continues only until legal proceedings are initiated and that the date of estrangement was not the "relevant date" for purposes of calculating Wife's interest in the Culver real estate. *See* Appellant's App. at 14. The parties were estranged no later than March 24, 2003, and the filing of the petition for dissolution did not terminate their estrangement. Therefore, estrangement is the triggering event for determining

---

3. The verified petition for dissolution is not in the record presented on appeal. However, at the final hearing Husband testified regarding the allegations in his verified petition for dissolution.

4. While the parties were physically separated in June 2003, they did not have a "legal separation" under Indiana Code Sections 31–15–3–1 to –11. Thus, the "legal separation" triggering event was never a factor.

Wife's interest in the Culver real estate. Because we cannot make findings of fact, on remand the dissolution court may determine whether and when the parties were estranged before March 24, 2003, and use that date to calculate Wife's interest under paragraph nine of the Agreement.

## CROSS–APPEAL

### Issue One: Calculation of Wife's Interest

■ Having determined that Wife's interest in the Culver real estate should be tolled as of the date of estrangement, and, in any event, no later than March 24, 2004, we next address Wife's contention that the dissolution court erred in its calculation of her interest. We also address the recalculation of Wife's interest using March 24, 2004, as the date of estrangement. The dissolution court determined that, under paragraph nine, Wife's six-percent interest in the Culver real estate for the first year of marriage accrued on the date of marriage and that all subsequent interest began accruing as of the first anniversary of the marriage. Based on that construction, the court concluded that Wife's interest in the Culver real estate totaled $150,443.01.[5] The court rejected Wife's contention that her interest, after the initial six-percent interest vested on the date of marriage, continued to accrue immediately thereafter. Wife reasserts that argument in her cross-appeal. We must agree with Wife.

■ A court will apply the construction that the parties have given to an ambiguous contract. *DeHaan v. DeHaan*, 572 N.E.2d 1315, 1323 (Ind.Ct.App.1991), *trans. denied.* The Agreement provides in relevant part:

> [N]otwithstanding any provisions that may be contained in this agreement to the contrary, upon the estrangement, dissolution of marriage or legal separation of the parties, or upon the death of the Husband, whichever of the four occurs earlier, the Wife will be entitled to have and receive from the Husband an amount equal to six percent of the fair market value of the Husband's real estate located at Venetian Village, Culver, Indiana, for each 365–day year, measured from the date of the marriage of the parties to the date of such estrangement, dissolution of marriage or legal separation, or the death of the husband, whichever of the latter four occurs earlier .... The *first six percent accrues immediately on the date of the marriage of the parties, with an additional six percent per annum accruing daily* and to be so prorated to the date of date of [sic] such estrangement, dissolution of marriage or legal separation, or the death of the Husband, whichever of the latter four occurs earlier.

Appellant's App. at 35 (emphasis added). The dissolution court determined that the equity for the first year of marriage vested on the date of marriage and, therefore, that additional equity for the subsequent

---

5. In the Decree, the dissolution court determined that Wife was entitled to $150,132.42 pursuant to paragraph nine of the Agreement, calculated as follows:

| | |
|---|---|
| March 10, 2001: | $ 43,560 |
| March 10, 2002 to March 9, 2003: | $ 43,560 |
| March 10, 2003 to March 9, 2004: | $ 43,560 |
| March 10, 2004 to August 19, 2004: | $ 19,452.42 |

Appellant's App. at 14. But the dissolution court later granted in part Wife's motion to correct error with respect to that calculation.

Specifically, the dissolution court agreed with Wife that the annual six-percent interest totaled $43,650 instead of $43,560. The trial court also corrected its calculation of the amount due between March 10, 2004 and August 19, 2004, the date of dissolution, because that figure had been based on the erroneous $43,560 figure. According to the corrected figures in the Order on Motion to Correct Error, Wife was entitled to

years of marriage did not begin to accrue until the parties' first wedding anniversary. But that conclusion is contrary to the testimony of both parties. Husband testified at trial that upon their marriage Wife acquired a six-percent interest in the Culver real estate and that on the first anniversary of the marriage Wife accrued an "additional" six-percent interest in that property. Transcript at 14. In his pretrial contentions, Husband also stated that Wife's equity included a full six-percent interest on the date of marriage plus an "additional 6% of $727,500 for [the] first 365 days of marriage." Appellee's App. at 31. And Wife's pretrial contentions and calculations included a six-percent interest on the date of marriage with additional interest accruing for each day of the marriage after that, which contention and calculation she repeated in her testimony at the final hearing.[6]

The Agreement provides that Wife was to accrue a full six-percent interest in the Culver real estate on the date of the marriage, and it provides further that Wife was to acquire "an additional six percent per annum accruing daily." Appellant's App. at 35. As indicated by the parties' testimony and the pretrial contentions, both parties understood the Agreement to mean that, after a full six-percent interest had vested on the date of the marriage, Wife's interest in the Culver real estate would continue to accrue thereafter at the rate of six percent per annum. The dissolution court erred by construing the

Agreement contrary to its terms and the understanding of the parties.

Having construed paragraph nine of the Agreement, we conclude that Wife's interest in the Culver real estate must be recalculated as set out in that paragraph. Paragraph nine provides that Wife acquired a six-percent interest in the property on the date of marriage and that she accrued an additional six-percent interest per annum for each day of the marriage until the earliest of the listed trigger dates. The trigger date is no later than March 24, 2003. Therefore, using that date, Wife's interest in the Culver real estate would be calculated as follows:

| | |
|---|---|
| March 10, 2001 | $ 43,650 |
| March 10, 2001 to March 9, 2002 | $ 43,650 |
| March 10, 2002 to March 9, 2003 | $ 43,650 |
| March 10, 2003 to March 24, 2003 | $ 1,793.847 |
| | $132,743.84 |

We hold that under paragraph nine of the Agreement, Wife would be entitled to not more than $132,743.84, which represents her accrued interest in the Culver real estate as of March 24, 2003. If, however, on remand the dissolution court should determine that an earlier estrangement date applies, this figure must be recalculated accordingly.

### Issue Two: Wife's Tax Loss Carryover/Filing of 2002 Tax Returns

Wife also contends that the dissolution court erred by requiring her to reimburse Husband for the increase in his income tax liability caused by the parties'

---

$150,443.01 under paragraph nine of the Agreement.

6. Wife's calculation of her interest in the Culver Real Estate can be broken down as follows:

| | | |
|---|---|---|
| March 10, 2001 (date of marriage) | 365 days | (representing the full six-percent interest) |
| March 10, 2001 to March 9, 2002 | 365 days | |
| March 10, 2002 to March 9, 2003 | 365 days | |
| March 10, 2003 to June 14, 2003 | 97 days | |
| | 1,192 days | |

7. This figure is calculated as follows: $43,650 divided by 365 days per year times 15 days (March 10, 2003 through March 24, 2003).

filing of individual 2002 income tax returns. Wife's argument assumes that a tax loss carryover is property that could be subject to allocation in dissolution proceedings, which presents a matter of first impression in Indiana. Only Missouri and New York courts have addressed that question, and both have found that a tax loss carryover is marital property. *See Mills v. Mills*, 663 S.W.2d 369, 372 (Mo.Ct. App.1983) (holding that a long-term tax loss carry forward was marital property based on the wife's uncontroverted evidence that the carry forward resulted from the sale of stock acquired during the marriage); *Finkelstein v. Finkelstein*, 268 A.D.2d 273, 701 N.Y.S.2d 52, 54 (2000) (holding that a tax loss carry forward accumulated by the parties constituted a marital asset subject to distribution in their dissolution proceeding).

We agree with Missouri and New York that a tax loss carryover is property subject to distribution in a dissolution proceeding under Indiana Code Section 31–15–7–4. Although the tax loss carryover was not separately listed on Wife's exhibit to the Agreement, the loss was accumulated through stock transactions conducted in Wife's Schwab account, and that account was listed on Wife's exhibit. Moreover, Wife testified that Husband was aware of her tax loss carryover.

While Wife's tax loss carryover would otherwise be marital property, under the Agreement the Schwab account is not subject to a just and reasonable distribution in the dissolution proceedings. *See* Ind.Code § 31–15–7–4. Thus, the question becomes whether the dissolution court correctly construed the Agreement when it ordered Wife to reimburse Husband for the increase in his 2002 tax liability that resulted from their filing of individual tax returns.

The recitals in the parties' Agreement[8] indicate that the parties intended to retain their separate property free of any claim by the other. Paragraph two of the Agreement provides that Husband "waives, discharges and releases any and all right, title and interest whatsoever that he ... acquires in the property, whether real, personal or mixed, now owned or hereafter acquired, of the Wife at any time hereafter by reason of the marriage, *subject to the provisions below*." Appellant's App. at 33 (emphasis added). In paragraph fourteen, one of the provisions "below" paragraph two, the parties agreed that each would be "solely responsible for his or her debts and liabilities incurred prior to the date of their marriage as well as after the date of their marriage." Appellant's App. at 38. But in paragraph thirteen the parties agreed to file a joint tax return during the marriage if filing jointly produced the smallest amount of aggregate tax. Wife contends that paragraphs two and fourteen override paragraph thirteen. We cannot agree.

▮▮▮▮ In construing a contract, we presume that all provisions were included for a purpose, and, if possible, we reconcile seemingly conflicting provisions to give effect to all provisions. *George S. May Int'l Co. v. King*, 629 N.E.2d 257, 261 (Ind.Ct. App.1994) (citation omitted). We must accept an interpretation of the contract that harmonizes all the various parts so that no provision is deemed to conflict with, to be repugnant to, or to neutralize any other provision. *Id.* (citation omitted). When a contract contains general and specific provisions relating to the same subject, the specific provision controls. *Id.* (citation omitted).

Wife asks us to ignore these rules of construction. Specifically, Wife asks that

---

8. The recitals were incorporated into and made a part of the Agreement pursuant to Paragraph One.

we hold that the general provisions in paragraphs two and fourteen regarding the waiver of interest and preservation of the parties' separate property prevail over the more specific provision in paragraph thirteen, which dictates when the parties are to file a joint tax return. As the more specific provision, paragraph thirteen controls. Wife's argument would also require us to disregard the qualifying language in paragraph two, which provides that Husband's waiver of his interest in Wife's property is subject to the paragraphs "below" paragraph two. Paragraph thirteen follows paragraph two. Therefore, Husband's general waiver of interest in Wife's property contained in paragraph two is subject to paragraph thirteen, which dictates when the parties shall file a joint tax return. And this interpretation is not inconsistent with paragraph fourteen because under paragraph thirteen the parties agree to pay their pro rata share of taxes when filing a joint return.

If the parties had filed a joint 2002 tax return, all of Wife's tax loss carryover would have been consumed to offset gains reported by Husband. When executing the Agreement, the parties likely did not contemplate that all of Wife's tax loss carryover might be consumed on a single joint tax return.[9] But, as we have already noted, a court will apply the construction the parties have given to an ambiguous contract. See DeHaan, 572 N.E.2d at 1323. Here, by her own conduct, Wife is estopped to assert that under the Agreement Husband was not entitled to benefit from her tax loss carryover when the parties filed a joint tax return for 2001 and Wife's tax loss carryover was applied to reduce the parties' aggregate tax liability for that year. Wife understood that under the Agreement she was obligated to file a joint tax return if doing so would "produce the smallest amount of aggregate tax," and she is bound by the express terms of that provision.

We conclude that the dissolution court correctly construed the Agreement to require the parties to file a joint tax return for 2002 even though Wife's tax loss carryover was otherwise her separate property under the Agreement. However, the court acknowledged Wife's concern about the manner in which some of Husband's income was characterized and reported on the joint return.[10] The court noted at the final hearing that Husband had expressed a willingness to be reimbursed for the tax loss benefit he would have derived from filing a joint 2002 tax return. Thus, instead of ordering that the parties file a joint return, the dissolution court ordered that the amount of additional tax that Husband paid would be offset against Wife's interest in the Culver real estate. We conclude that the trial court resolved this issue correctly.[11]

9. The parties likely did not believe that a joint filing would result in a smaller aggregate tax because of the "marriage penalty" in existence when Agreement was executed. Husband's accountant testified at the final hearing that the "marriage penalty" was removed effective 2003. Transcript at 57–58 ("[i]ncreases were made in standard deductions and the tax rate brackets so married persons filing joint returns essentially have the equivalent of double single return[s] which means that if you file married filing separate [sic] the results are nearly the same as the combined rate or combined tax on a joint return if the circumstances or income are nearly equal.").

10. Wife's refusal to file a joint 2002 tax return was based on advice from her accountant. At the final hearing Wife's accountant expressed concern about the characterization of certain income reported by Husband on the proposed joint return.

11. We reject as moot Wife's argument that she would be entitled to reimbursement for the use of her tax loss carryover if the dissolution court had ordered her to file a joint 2002 tax return. We also reject her argument that she was excused from filing joint 2002 tax returns because of her concerns about Husband's tax treatment of 2002 real estate sales.

## Conclusion

We hold that the date of estrangement is the relevant date for the valuation of Wife's interest in the Culver real estate. But when an estrangement occurred is a question of fact, and we cannot make findings of fact. We hold as a matter of law that estrangement occurred no later than the date the petition for dissolution was filed. We remand for further proceedings not inconsistent with this opinion. Specifically, if the parties continue to dispute the date of estrangement, they shall notify the dissolution court within thirty days of the date of this opinion, and the dissolution court shall then determine, on the existing record or after further hearing, when an estrangement first occurred.

We further hold that the trial court erred in its calculation of Wife's interest in the Culver real estate. Specifically, Wife acquired a full six-percent interest on the date of marriage and began accruing six-percent interest per annum for each day of marriage thereafter. Once the date of estrangement is determined, whether that be on the date of filing or an earlier date found by the dissolution court on remand, Wife's interest in the Culver real estate shall be recalculated accordingly. Finally, we conclude that the dissolution court did not err when it ordered Wife to reimburse Husband for his additional 2002 tax liability that resulted from her refusal to file joint tax returns.

We affirm in part, reverse in part, and remand with instructions.

SULLIVAN, J., and RILEY, J., concur.

Wife failed to support the latter contention by meaningful argument.