Richard and Elizabeth RYAN,
Appellants,

v.

LAWYERS TITLE INSURANCE CORP.
and Elaine E. English d/b/a/ Agri-
Town Agency, Appellees.

No. 56A03–1101–PL–75.

Court of Appeals of Indiana.

Dec. 13, 2011.

Patrick K. Ryan, Kentland, IN, Attorney for Appellants.

Craig D. Doyle, Mark R. Galliher, Kurt V. Laker, Doyle Legal Corporation, P.C., Indianapolis, IN, Attorneys for Appellee Lawyers Title Insurance Corp.

F. Anthony Paganelli, Taft Stettinius & Hollister LLP, Indianapolis, IN, Attorney for Appellee Elaine E. English d/b/a Agri–Town.

## OPINION

BROWN, Judge.

Richard and Elizabeth Ryan appeal the trial court's ruling granting summary judgment in favor of Lawyers Title Insurance Corporation ("Lawyers Title") and Elaine E. English d/b/a Agri–Town Agency ("Agri–Town"). The Ryans raise four issues, which we consolidate and restate as whether the trial court erred in granting summary judgment in favor of Lawyers Title and Agri–Town. We affirm.

The relevant facts follow. In December 1972, Russell and Mary Keen sold a 6.56–acre parcel of real property (the "Ryan Property") to the Ryans pursuant to a Purchase Agreement dated November 9, 1972.[1] The Keens retained certain proper-

---

1. The designated evidence includes two versions of the Purchase Agreement, one of which was attached to the Ryans' original complaint and the other of which was attached to their amended complaint. The Ryans identify the version of the Purchase Agreement attached to the amended complaint as the "[c]orrected Purchase Agree-

ment with completed reverse side." Appendix of Appellee Lawyers Title at 114. In its appellee's brief, Lawyers Title states in a footnote: "The arguments presented by Lawyers Title to the Trial Court and to this Court do not concede the completeness and authenticity of this alleged agreement, but rather assume it is authentic only for the sake of argu-

ty (the "Keen Property") adjacent to the Ryan Property, and Mary Keen owned the Keen Property until her death on March 31, 2006. In June 2006, the personal representative of Mary Keen's estate (the "Estate") obtained an order from the probate court authorizing the sale of the Keen Property to Steve and Sandra Hageman. On December 20, 2006, a real estate closing took place at the offices of Agri–Town at which the Keen Property was conveyed by deed to the Hagemans.

On March 12, 2008, the Ryans filed a Complaint for Specific Performance against the Estate, which attached a copy of the 1972 Purchase Agreement and alleged that the terms of the Purchase Agreement provided the Ryans with a right of first refusal if the Keens ever elected to sell the Keen Property and that the Estate sold the Keen Property to the Hagemans without providing the Ryans with an opportunity to exercise this right.

On May 8, 2008, the Estate filed an answer and a third party complaint against Agri–Town and Land America Financial Group, Inc. ("Land America"), which alleged that Agri–Town and Land America were contracted by the Estate to perform a title search and issue/guarantee title insurance upon which the Estate relied to convey clear title to its real estate and that the title search provided by Agri–Town and Land America did not reveal any right of interest as alleged by the Ryans. The complaint requested judgment for all sums the Ryans may receive against the Estate.

On November 14, 2008, Land America and Agri–Town filed a motion for leave to file a third party counterclaim contending that the alleged right of first refusal is invalid as a matter of law, requesting leave to file a third party counterclaim against the Ryans seeking a declaratory judgment that the purported right of first refusal is invalid, and alleging that a determination that the right of first refusal is invalid would be dispositive of all claims between and among the various parties. The court granted the motion and ordered the third party counterclaim attached to the motion for leave to be deemed filed.

On January 22, 2009, the Ryans filed an Amended Complaint for Specific Performance against the Estate, which attached a second version of the Purchase Agreement and a letter dated December 6, 1972, regarding the corrected version and alleged that the attached version was "[t]he corrected Purchase Agreement dated November 9, 1972." Appendix of Appellee Lawyers Title at 48. On August 14, 2009, Land America filed an Agreed Motion to Substitute stating that in fact Lawyers Title, not Land America, was the underwriter issuing a title insurance policy to the Hagemans, who purchased the subject real estate from the Estate, and requesting that Lawyers Title be substituted in place of Land America as the named third party defendant/third party counterclaim plaintiff. The court granted the motion.

On August 24, 2009, Lawyers Title filed a motion for summary judgment together with a brief and designation of evidence in support of the motion. On the same day, Agri–Town filed a motion for summary judgment with designated evidence and a supporting brief. On February 12, 2010, the trial court held a hearing on the summary judgment motions.

On December 14, 2010, the trial court entered summary judgment in favor of Lawyers Title and Agri–Town. The court's order provides in part:

> [T]he Court finds (and is in agreement with the Ryans) that the right of first refusal in the Amended Purchase Agree-

ment." Brief of Appellee Lawyers Title at 6

n. 2. We assume its authenticity as well.

ment is personal to the signatories to that agreement. However, even assuming that the right of first refusal does not run afoul of the common law Rule Against Perpetuities, the Court also finds that it has not been presented with any genuine issue of fact that the Sellers (including Mary Keen) ever elected to sell the remainder of [the Keen Property] during their lifetimes. As such, the Court finds that the right of first refusal terminated at the death of the last surviving Seller (Mary Keen) and is now unenforceable by the Ryans against the Keens' heirs.

*Id.* at 10.[2] The Ryans appeal the court's summary judgment ruling.

The issue is whether the trial court erred in granting summary judgment in favor of Lawyers Title and Agri–Town. When reviewing a grant of a motion for summary judgment, we apply the same standard applicable to the trial court. *Wagner v. Yates,* 912 N.E.2d 805, 808 (Ind. 2009). Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* Summary judgment should be granted only if the evidence sanctioned by Ind. Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. *Freidline v. Shelby Ins. Co.,* 774 N.E.2d 37, 39 (Ind.2002). All factual inferences must be construed in favor of the non-moving party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Kovach v. Caligor Midwest* 913 N.E.2d 193, 197 (Ind.2009), *reh'g denied.*

■■ In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Ind. Trial Rule 56 materials. *Catt v. Bd. of Comm'rs of Knox County,* 779 N.E.2d 1, 3 (Ind.2002). The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of material fact to be resolved. *Rice v. Strunk,* 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

The Ryans essentially contend that they were provided with a right of first refusal to purchase the Keen Property from the Estate following the death of Mary Keen. Lawyers Title and Agri–Town maintain that the right of first refusal was not valid or enforceable following the death of Mary Keen.

The November 9, 1972 Purchase Agreement attached to the Ryans' amended complaint and included in the designated evidence provided in part, in pre-printed text:

> Upon acceptance, this offer shall become binding upon and inure to the benefit of purchase and Seller and their respective heirs, executors, administrators, successors, and assigns, and shall be deemed to contain all the terms and conditions agreed upon, it being agreed that there are no conditions, representations, war-

---

**2.** The grant of summary judgment effectively provided the relief sought by Lawyers Title and Agri–Town in their third party counterclaim, denied the Ryans the relief sought in their amended complaint, and rendered moot the allegations contained in the Estate's third party complaint against Lawyers Title and Agri–Town. Thus it appears the order constitutes a final judgment and there is no contention to the contrary. *See* Ind. Appellate Rule 2(H).

ranties or agreements not stated in this instrument.[3]

Appellants' Appendix at 20; Appendix of Appellee Lawyers Title at 51, 119. The Purchase Agreement further provided in part, in type filled in on the form:

In the event seller would elect to sell remaining part of this farm, purchaser to have first refusal. (continued on reverse side:

\* \* \* \* \* \*

Continued from front) and be it further agreed in the event the purchaser elects to sell this tract with the improvements, the seller shall have first refusal to purchase it. This reciprocal agreement shall be acted upon within thirty days by either party, if either the buyer or the seller wishes to buy or sell, after notice of intent to buy or sell, as set forth, [sic]

Sellers are presently the owners of a farm consisting of 130 acres more or less, of which the tract herein conveyed was or iginally [sic] a part thereof. If sellers should desire to sell such farm, buyers shall have the first option to purchase same, upon the same terms and conditions which sellers have obtained from any third party. Sellers shall notify buyers in writing of their desire to sell the farm and identify the third party and the terms and purchase price thereof. If within thirty days of such written notice, the buyers shall notify sellers that they will purchase said farm for the same price and under the same terms offered to the identified third party, then and in that event, the sellers shall be legally obligated to sell the said farm to buyers.

It is further agreed that if buyers shall desire to sell the property herein described to any other person, the sellers shall have the option to purchase same under same terms and conditions embodied and set forth in sellers [sic] option to purchase, as set forth above.

Both options are not to be construed as a covenant running with the land, but may only be exercised by the signatorys [sic] to this agreement.[4]

Appellants' Appendix at 20; Appendix of Appellee Lawyers Title at 51–52, 119–120.

The Ryans argue that the court erred in finding that their rights of first refusal terminated upon the death of Mary Keen, that "if the right of first refusal is personal and does not run with the land, then it lives and dies with the owner of the right, and not the grantor," and that "neither the death of Russell or Mary Keen terminates the right of first refusal owned by the Ryans, which is contrary to the Order of the Trial Court." Appellants' Brief at 11. The Ryans further argue that the Purchase Agreement is ambiguous and thus that summary judgment is not proper because the Purchase Agreement includes both language that the offer shall become binding upon the parties' heirs and executors and language that the options may only be exercised by the signatories of the agreement. The Ryans assert: "Mary C. Keen's death does not demand that the Ryans' right of first refusal be terminated. The Ryans are alive. They are the holder of the right." Id. at 20.

Lawyers Title, in its appellee's brief, and Agri–Town, adopting the arguments set forth in Lawyers Title's brief, argue that

---

3. This sentence in the Purchase Agreement was part of the pre-printed text of a form which states it was adopted by the Indiana Real Estate Association, Inc.

4. This portion of the Purchase Agreement was not part of the pre-printed text but was typed into a space provided for additional terms and extended onto the back side of the Purchase Agreement.

the trial court correctly construed the Purchase Agreement. Lawyers Title and Agri–Town argue that rights of first refusal restrict the free alienation of property and that such provisions are disfavored and are not to be expanded beyond their plain and ordinary meaning.

■ The right of first refusal is typically associated with the purchase of property, where the holder has the right to purchase the property on the same terms that the seller is willing to accept from a third party. *Hyperbaric Oxygen Therapy Sys., Inc. v. St. Joseph Med. Ctr. of Ft. Wayne, Inc.*, 683 N.E.2d 243, 248 (Ind.Ct.App.1997), *trans. denied*, When construing the meaning of a contract, our primary task is to determine and effectuate the intent of the parties. *Whitaker v. Brunner*, 814 N.E.2d 288, 293 (Ind.Ct.App. 2004), *trans. denied*, First, we must determine whether the language of the contract is ambiguous. *Id.* The unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. *Id.* If the language of the instrument is unambiguous, the parties' intent will be determined from the four corners of the contract. *Id.* at 293–294. If, on the other hand, a contract is ambiguous, its meaning must be determined by examining extrinsic evidence and its construction is a matter for the factfinder. *Id.* at 294. When interpreting a written contract, we attempt to determine the intent of the parties at the time the contract was made. *Id.* We do this by examining the language used in the instrument to express their rights and duties. *Id.* We read the contract as a whole and will attempt to construe the contractual language so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* We must accept an interpretation of the contract that harmonizes its provisions, rather than one that places the provisions in conflict. *Id.*

*See Hyperbaric Oxygen*, 683 N.E.2d at 247–249 (interpreting the language of a contract providing for a right of first refusal).

■ In addition, in construing a contract we presume that all provisions were included for a purpose, and if possible we reconcile seemingly conflicting provisions to give effect to all provisions. *Magee v. Garry–Magee*, 833 N.E.2d 1083, 1092 (Ind.Ct.App.2005). We must accept an interpretation of the contract that harmonizes all the various parts so that no provision is deemed to conflict with, to be repugnant to, or to neutralize any other provision. *Id.* When a contract contains general and specific provisions relating to the same subject, the specific provision controls. *Id.* "It is well settled that when interpreting a contract, specific terms control over general terms." *Burkhart Advertising, Inc. v. City of Fort Wayne*, 918 N.E.2d 628, 634 (Ind.Ct.App.2009) (citing *GPI at Danville Crossing, L.P. v. West Cent. Conservancy Dist.*, 867 N.E.2d 645, 651 (Ind.Ct.App.2007), *reh'g denied, trans. denied* ), *trans. denied.*

The Indiana Supreme Court has stated that "[a]part from any statutory requirements, restrictions on transfer are to be read, like any other contract, to further the manifest intention of the parties" and that "[b]ecause they are restrictions on alienation and therefore disfavored, the terms in the restrictions are not to be expanded beyond their plain and ordinary meaning." *F.B.I. Farms, Inc. v. Moore*, 798 N.E.2d 440, 445–446 (Ind.2003) (discussing transfer restrictions related to corporate ownership); *see also Mayer v. BMR Properties, LLC*, 830 N.E.2d 971, 979–980 (Ind.Ct.App.2005) (noting that "we have declared that restrictive covenants are generally disfavored by law and will be strictly construed by the court, which re-

solves all doubts in favor of the free use of property and against restrictions").

The American Law of Property states that absent evidence of intent, preemptions [5] are generally construed to be non-transferable. *See Shower v. Fischer,* 47 Wash.App. 720, 737 P.2d 291, 295 (1987). The American Law of Property provides:

> There is a strong tendency to construe an option or pre-emption to be limited to the lives of the parties, unless there is clear evidence of a contrary intent. *See Lantis v. Cook,* [342 Mich. 347, 69 N.W.2d 849 (1955),] *Kerschner* [*Kershner* ] *v. Hurlburt,* [277 S.W.2d 619 (Mo. 1955),] and *Roemhild v. Jones,* [239 F.2d 492 (8th Cir.1957) ].

*Id.* (citing 6 American Law of Property § 26.67 1977 Supp., at 984). *See Stoneburner v. Fletcher,* 408 N.E.2d 545, 547 (Ind. Ct.App.1980) (citing the American Law of Property § 26.64, p. 507 (1952) and noting that "a pre-emptive right appears to continue for the life of the vendor unless a longer or shorter duration is specified").

In *Kershner,* the court held that the contract between adjoining property owners which provided that if either desired to sell a portion of his land, he must first offer it to the other at a set price, was a personal right that was not transferable because there was no provision nor any evidence of intent that the contract be binding on their heirs. *Shower,* 737 P.2d at 295 (citing *Kershner v. Hurlburt,* 277 S.W.2d at 623).

In *Brauer v. Hobbs,* Glenna and Leonard Wilson, husband and wife, sold a parcel of land to the plaintiff in 1976. 151 Mich.App. 769, 391 N.W.2d 482, 483 (1986). The parties also stipulated that the plaintiff would have the option to purchase a second parcel. *Id.* Leonard died, and Glenna later died. *Id.* The court found that the agreement was a right of first refusal and held that the right of first refusal terminated on Glenna's death. *Id.* at 485–486. The court explained:

> We hold that the right of first refusal agreement terminated upon her death for the reason stated in *Waterstradt v. Snyder,* 37 Mich.App. 400, 402–403, 194 N.W.2d 389 (1971):
>
> > [The agreement] terminated on the death of the [grantor] because it required her personal volitional act in her lifetime. We cite with approval, as did the Supreme Court in [*Old Mission Peninsula School Dist. v. French,* 362 Mich. 546, 551, 107 N.W.2d 758 (1961) ], the general rule:
> >
> > > There is a strong tendency to construe an option or pre-emption to be limited to the lives of the parties, unless there is clear evidence of a contrary intent.

---

5. According to the American Law of Property, a preemption:

"requires that, before the property conveyed may be sold to another party, it must first be offered to the conveyor or his heirs, or to some specially designated person. A preemption may be of limited duration, as where it is exercisable only within the life of a designated person; or it may be perpetual, as where the provision in terms binds the conveyee, his heirs and assigns, for the benefit of a designated person, his heirs and assigns. A pre-emption differs materially from an option. An option creates in the optionee a power to compel the owner of property to sell it at a stipulated price whether or not he be willing to part with ownership. A pre-emption does not give to the pre-emptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the preemption, at the stipulated price. Upon receiving such an offer, the pre-emptioner may elect whether he will buy. If he decides not to buy, then the owner of the property may sell to anyone.

6 AMERICAN LAW OF PROPERTY § 26.67 at 506–507 (1952).

In the instant case, there is no clear evidence of contrary intent. If plaintiff intended to bind the Wilsons' heirs, he should have so provided.

*Id.* at 486. The court affirmed the trial court's denial of the plaintiff's request for specific performance. *Id.* at 487. *See also Waterstradt v. Snyder,* 37 Mich.App. 400, 194 N.W.2d 389, 389 (1971) (noting that had the grantor of the right "meant to bind her personal representative, her successors in title, or assigns . . . , they should have said so," that "[w]e decline to rewrite the language of the option," and that "[w]e make no distinction between 'personal representative' and 'successor' or 'assigns' "); *Roemhild v. Jones,* 239 F.2d 492, 495 (8th Cir.1957) (noting that "[t]he vital issue for determination is whether the option we are considering is personal and terminates upon the death of either the grantor or the grantee" [6] and that "[i]t is no where stated that the option is available if the grantee, his heirs, or assigns offers it for sale," and holding that "[w]e find nothing to persuade us that the parties intended the option to continue beyond the lifetime of Jones," that "Jones could only offer the land for sale during his lifetime," and that "[w]e believe that the parties intended the option to expire upon the death of Jones.").

In this case, we examine the terms and language of the right of first refusal as set forth in the Purchase Agreement. We conclude that the right of first refusal here was personal and terminated upon the death of Mary Keen as the last-surviving grantor of the right. Under the terms the Purchase Agreement, the Ryans' right arose only if the Keens as the sellers offered the land for sale. The terms did not state, expressly or implicitly, that the right was available if the sellers or their heirs, assigns, or personal representatives offered the Keen Property for sale. The Purchase Agreement expressly provided that the right of first refusal was "not to be construed as a covenant running with the land" and that "[i]n the event *seller* would elect to sell remaining part of this farm, purchaser to have first refusal." Appellants' Appendix at 20 (emphasis added). The provision also states that "[s]ellers are presently the owners of a farm . . . ," *id.,* which further supports the conclusion that the parties intended for the word "seller" in the first sentence of the provision to refer to the Keens personally and not to their heirs, assigns, or executors as those persons were not owners of the Keen Property farm at the time the Purchase Agreement was executed. Further, while we acknowledge that the general pre-printed provision in the Purchase Agreement provided that the offer would become binding upon "Seller and their respective heirs, executors, administrators, successors, and assigns," *see* Appellant's Appendix at 20, we note that "[i]t is well settled that when interpreting a contract, specific terms control over general terms," *see Burkhart,* 918 N.E.2d at 634, and that the more specific language contained in the paragraphs setting forth the right of first refusal providing that the right was "not to be construed as a covenant running with the land," *see* Appellant's Appendix at 20, controls over the more general language in this situation. *See Burkhart,* 918 N.E.2d at 634 (finding that the more specific language of a particular provision in a contract controlled over the more general language in the situation). We are not persuaded that the designated materials and the terms of the Purchase Agreement

---

6. In *Roemhild,* Roemhild (the grantor) delivered a deed conveying certain land to Jones (the grantee), and the deed reserved an option to repurchase. *Roemhild,* 239 F.2d at 494– 495. Under its terms, the option only arose if Jones as the grantee offered the land for sale, in which case Roemhild as the grantor had the option to purchase the land. *Id.* at 495.

demonstrate clear evidence of the intent of the parties to the Purchase Agreement that the right of first refusal at issue here was to continue beyond the lifetimes of the Keens as the grantors of the right. If the parties to the Purchase Agreement had intended to bind each others' heirs or personal representatives in connection with the rights of first refusal, they could easily have so provided. *See Roemhild,* 239 F.2d at 495; *Brauer,* 391 N.W.2d at 486.

Based upon the designated evidence and Purchase Agreement, we conclude that the right of first refusal set forth in the Purchase Agreement was personal and could be exercised by the Ryans only in the event the Keens, and not a subsequent transferee or owner of the Keen Property or the Estate, desired or undertook steps to sell the Keen Property to a third party. Accordingly, the court did not err in granting summary judgment in favor of Lawyers Title and Agri–Town.[7]

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Lawyers Title and Agri–Town.

Affirmed.

KIRSCH, J., concurs.

BAKER, J., concurs with separate opinion.

BAKER, Judge, concurring.

I concur with the majority but write separately to emphasize a few points. As the majority states in footnote one, there were two versions of the Purchase Agreement. The Keens and the Ryans entered into the first version on November 9, 1972. By letter dated December 6, 1972, the Keens' realtor forwarded to them a corrected version of the Purchase Agreement, which provided a much more detailed and reciprocal right of first refusal. Included in the right of first refusal of the corrected Purchase Agreement was the statement: "Both options are not to be construed as a covenant running with the land, but may only be exercised by the signatorys to this agreement." Appellant's App. p. 20.

The reciprocal right of first refusal, including the last sentence binding only the signatories, was added to the bottom and to the backside of the document, whereas the clause in the Purchase Agreement binding "their respective heirs, executors, administrators, successors, and assigns" was part of the preprinted form. *Id.* And as acknowledged by the majority, the rule is that when a contract contains general and specific provisions relating to the same subject, the specific provisions controls. *Magee v. Garry–Magee,* 833 N.E.2d 1083, 1092 (Ind.Ct.App.2005). Accordingly, as determined by the majority, the right of first refusal was limited to the signatories. Thus, the right terminated upon Mary's death on March 31, 2006. Indeed, if we interpreted the right of first refusal such that it bound Mary's heirs, executors, administrators, successors, and assigns, then it would violate the common law Rule Against Perpetuities.

---

7. Lawyers Title and Agri–Town also argue that the right of first refusal is invalid as it violates the rule against perpetuities, and Agri–Town argues that the Ryans' alleged interest was outside the chain of title. Because we affirm the court's summary judgment ruling on other grounds, we need not address these issues.