## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 03 2016, 8:28 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
| --- | --- |
| Gary L. Griner | Trevor Q. Gasper |
| Mishawaka, Indiana | May · Oberfell · Lorber |
| | Mishawaka, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Elaine Adams, | March 3, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 71A04-1507-SC-867 |
| v. | Appeal from the St. Joseph Superior Court – Small Claims Division |
| Heather Stavropoulos, | The Honorable William J. Boklund, Senior Judge |
| *Appellee-Plaintiff* | The Honorable Elizabeth A. Hardtke, Magistrate |
| | Trial Court Cause No. 71D05-1412-SC-10819 |

**Bradford, Judge.**

# Case Summary

[1] In September of 2013, Appellee-Plaintiff Heather Stavropoulos purchased a puppy from Appellant-Defendant Elaine Adams. According to the terms of the contract for the sale of the puppy, Adams warranted that the puppy was being sold in "good condition" and would not suffer from hip dysplasia before reaching the age of four. However, nearly immediately after the purchase of the puppy was completed, Stavropoulos discovered that the puppy suffered from environmental and food allergies which stemmed from an autoimmune disease. In addition, when the puppy was just fourteen months old, it was diagnosed with hip dysplasia. After receiving these diagnoses, Stavropoulos brought the instant action against Adams alleging a breach of the warranties contained in the parties' contract. After finding that breaches of said warranties had occurred, the small claims court entered a $3286.26 judgment against Adams.

[2] On appeal, Adams challenges the $3286.26 judgment, claiming that the small claims court erred by ordering her to refund the $1700.00 purchase price of the puppy to Stavropoulos without also requiring Stavropoulos to return the puppy to Adams. Adams also claims that the small claims court erred by ordering her to pay damages relating to certain expenses incurred by Stavropoulos as a result of the puppy's allergies. Finding no error by the small claims court, we affirm.

## Facts and Procedural History

[3] On September 4, 2013, the parties entered into a contract under the terms of which Stavropoulos agreed to purchase a Doberman Pinscher puppy

(hereinafter, the "puppy") from Adams for the sum of $1700.00. The portion of the parties' contract which is relevant to the instant matter provides as follows:

> 3. Puppy is being sold in good condition with current shots, and wormings. Puppy is guaranteed against hip d[y]splasia and cardio for 4 years. If either were to occur seller has option of replacement or refund of the purchase price.

Appellant's App. p. 17.

Almost immediately after bringing the puppy home, Stavropoulos noticed that the puppy seemed to be suffering from some health issues. Specifically, the puppy would vomit, would not eat "after a certain timeframe," and broke out in hives on multiple occasions. Tr. p. 5. After multiple visits to the veterinarian and the completion of multiple tests, it was determined that the puppy suffered from environmental and food allergies which fell under "an umbrella of an autoimmune disease." Tr. p. 7. This diagnosis resulted in the need for the puppy to undergo additional veterinary care and for Stavropoulos to purchase special food, medications, and supplements for the puppy.

In addition to the above-described allergy issues, when the puppy was approximately three months old, Stavropoulos began hearing a "popping" sound coming from the puppy's hips. Tr. p. 19. When these popping sounds continued, Stavropoulos became concerned about the possibility that the puppy was suffering from hip dysplasia. When the puppy was approximately fourteen months old, it was diagnosed with hip dysplasia. This diagnosis was subsequently confirmed by a second veterinarian.

[6] On December 29, 2014, Stavropoulos filed an action in the small claims court against Adams seeking $5000.00 in damages relating to the puppy's hip dysplasia diagnosis and the costs associated with the puppy's other medical ailments. Although Adams claimed during an April 14, 2015 trial, that she "would do anything if she could have helped" Stavropoulos with any issues Stavropoulos experienced with the puppy, nothing in the record indicates that Adams offered to replace the puppy prior to the date that Stavropoulos initiated the instant law suit. Tr. p. 62. In addition, Adams testified that she believes that, at the age of fourteen months, the puppy was too young to be diagnosed with hip dysplasia but would be happy to take the puppy back and refund the $1700.00 purchase price if the puppy was diagnosed with hip dysplasia after reaching its second birthday.

[7] Following the conclusion of the April 14, 2015 trial, the small claims court determined that there had been a breach of the warranties that the puppy was sold in good condition and that it would not suffer from hip dysplasia before the age of four. After reaching this determination, the small claims court entered a $3286.26 judgment against Adams. Adams subsequently filed a motion to correct error, which was denied by the small claims court on June 12, 2015. This appeal follows.

# Discussion and Decision

[8] Adams appeals the judgment of the small claims court following the denial of her motion to correct error.

Judgments in small claims actions are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). In the appellate review of claims tried by the bench without a jury, the reviewing court shall not set aside the judgment "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). In determining whether a judgment is clearly erroneous, the appellate tribunal does not reweigh the evidence or determine the credibility of witnesses but considers only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *See Estate of Reasor v. Putnam County* (1994), Ind., 635 N.E.2d 153, 158; *In re Estate of Banko* (1993), Ind., 622 N.E.2d 476, 481. A judgment in favor of a party having the burden of proof will be affirmed if the evidence was such that from it a reasonable trier of fact could conclude that the elements of the party's claim were established by a preponderance of evidence. This deferential standard of review is particularly important in small claims actions, where trials are "informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law." Ind. Small Claims Rule 8(A).

*City of Dunkirk Water & Sewage Dep't v. Hall*, 657 N.E.2d 115, 116 (Ind. 1995). Further, although rulings on motions to correct error are usually reviewable under an abuse of discretion standard, we review a case *de novo* when the issue on appeal is purely a question of law. *Eagle Aircraft, Inc. v. Trojnar*, 983 N.E.2d 648, 657 (Ind. Ct. App. 2013) (citing *Ind. Bureau of Motor Vehicles v. Charles*, 919 N.E.2d 114, 116 (Ind. Ct. App. 2009)). "The interpretation of a contract is a pure question of law." *Id.* (citing *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005)).

# I. Authority Relating to the Interpretation of a Contract

[9] In order to resolve the issues presented below, the small claims court was faced with the task of interpreting the parties' contract relating to the sale of the puppy. In order to review the propriety of the small claims court's judgment, we must do the same. "'The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties, as expressed in the language used, and to give effect to that intention, if it can be done consistent with legal principles.'" *Evansville-Vanderburgh Sch. Corp. v. Moll*, 264 Ind. 356, 362, 344 N.E.2d 831, 837 (1976) (quoting *Walb Constr. Co. v. Chipman*, 202 Ind. 434, 441, 175 N.E. 132, 134 (1931)). Thus, "[w]hen construing the meaning of a contract, our primary task is to determine and effectuate the intent of the parties." *Ryan v. Lawyers Title Ins. Corp.*, 959 N.E.2d 870, 875 (Ind. Ct. App. 2011).

[10] "Where the terms of a contract are clear the court merely applies its provisions." *Turnpaugh v. Wolf*, 482 N.E.2d 506, 508 (Ind. Ct. App. 1985). "Unambiguous language is conclusive upon the parties to the contract and the courts." *Id.* "In the absence of an ambiguity it is not within the function of the judiciary to look outside of the instrument to get at the intention of the parties." *Moll*, 264 Ind. at 362, 344 N.E.2d at 837. As such, "[i]f the language of the instrument is unambiguous, the intent of the parties must be determined from its four corners," *Turnpaugh*, 482 N.E.2d at 508, and "[w]e will not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions." *Kessel v. State Auto. Mut. Ins. Co.*, 871 N.E.2d 335, 337 (Ind. Ct. App. 2007).

"The terms of a contract are ambiguous only when reasonably intelligent persons would honestly differ as to the meaning of those terms." *Bressler v. Bressler*, 601 N.E.2d 392, 395 (Ind. Ct. App. 1992). "'The meaning of [an instrument] may be said to be clear, when it fairly expresses an intention on a reasonable interpretation of the language used, regardless of other possible intentions not apparent, but which must be reached through a forced construction or circuitous reasoning.'" *Id*. (quoting *Hauck v. Second Nat'l Bank of Richmond*, 153 Ind. App. 245, 286 N.E.2d 852, 863 (1972), *trans. denied*). "An instrument is not rendered ambiguous by the mere fact the parties disagree as to its proper construction." *Id*. "In determining whether an instrument is ambiguous, we must reference the whole instrument rather than only individual clauses." *Id*. at 395-96.

Any ambiguity in a contract is construed against its drafter. *Barney v. StoneMor Operating LLC*, 953 N.E.2d 554, 558 (Ind. Ct. App. 2011), *trans. denied*. Further,

> in construing a contract we presume that all provisions were included for a purpose, and if possible we reconcile seemingly conflicting provisions to give effect to all provisions. *Magee v. Garry-Magee*, 833 N.E.2d 1083, 1092 (Ind. Ct. App. 2005). We must accept an interpretation of the contract that harmonizes all the various parts so that no provision is deemed to conflict with, to be repugnant to, or to neutralize any other provision. *Id*. When a contract contains general and specific provisions relating to the same subject, the specific provision controls. *Id*. "It is well settled that when interpreting a contract, specific terms control over general terms." *Burkhart Advertising, Inc. v. City of Fort Wayne*, 918 N.E.2d 628, 634 (Ind. Ct. App. 2009) (citing *GPI at Danville Crossing, L.P. v. West Cent. Conservancy Dist.*, 867 N.E.2d

645, 651 (Ind. Ct. App. 2007), *reh'g denied, trans. denied*), *trans. denied*.

*Ryan*, 959 N.E.2d at 875.

# II. Analysis

## A. Return of Puppy

Adams argues on appeal that the small claims court erred in ordering her to refund the $1700.00 purchase price to Stavropoulos without also requiring Stavropoulos to return the puppy to Adams. For her part, Stavropoulos argues that return of the puppy was not required by the terms of the contract.

Again, the relevant portion of the parties' contract expressly provides as follows: "Puppy is guaranteed against hip d[y]splasia and cardio for 4 years. If either were to occur seller has option of replacement or refund of purchase price." Appellant's App. p. 17. The puppy was diagnosed with hip dysplasia when it was approximately fourteen months old, well before reaching its fourth birthday. As a result of the diagnosis, Stavropoulos sought and was granted a refund of the purchase price.

Adams attempts to frame the issue relating to the return of the puppy as one arising out of the Uniform Commercial Code ("UCC"). In attempting to do so, Adams cites to this court's opinion in *Michiana Mack, Inc. v. Allendale Rural Fire Protection District*, 428 N.E.2d 1367 (Ind. Ct. App. 1981). However, in *Michiana Mack*, the issue before the court did not involve a question as to what remedies were available following a breach of an express warranty, as is the issue in the

instant case, but rather a question as to what remedies were available under the UCC following the tender of non-conforming goods. *Id*. at 269-70. As such, we find Adams's reliance on *Michiana Mack* to be unavailing.

Upon review, we conclude that the terms of the parties' contract are unambiguous and, as a result, we will look no further than the four corners of the contract to determine the parties' intent. *See Turnpaugh*, 482 N.E.2d at 508. The contract at issue expressly warranted against hip dysplasia, the condition with which the puppy was diagnosed when it was only fourteen months old. The contract also expressly provides that if the puppy was diagnosed with hip dysplasia before reaching the age of four, one method of recourse was a refund of the $1700.00 purchase price. To give a refund is to "reimburse" or "to give or put back." Webster's Third New International Dictionary 1910 (1964). The contract, which appears to be drafted by Adams, makes no mention of return of the puppy as a condition for payment of the refund. We therefore conclude that the small claims court did not err in ordering that Adams refund the $1700.00 purchase price to Stavropoulos without also requiring that Stavropoulos return the puppy to Adams.

## B. Additional Damages

Adams also argues that the small claims court erred in ordering her to pay an additional $1586.26 in damages to Stavropoulos. For her part, Stavropoulos argues that the trial court did not err in awarding her the $1586.26 in additional damages because said damages reflected expenses incurred as a direct result of

the breach of Adams's express warranty that the puppy was being sold "in good condition."

[18] In arguing that the trial court erred in ordering her to pay the $1586.26 in damages to Stavropoulos, Adams claims that because a puppy is personal property, damages relating to said puppy cannot exceed the fair market value of the puppy. In support of this claim, Adams cites to *Ridenour v. Furness*, 546 N.E.2d 322, 325 (Ind. Ct. App. 1986) for the proposition that damages for the total destruction of personal property are measured by the fair market value of said property at the time of loss. Adams's reliance on *Ridenour*, however, is misplaced because the damages included in the small claims court's order do not stem from the destruction of any personal property belonging to Stavropoulos. Rather, the damages stem from a breach of the express warranty contained in the parties' contract relating to the condition of the puppy at the time of the sale. Accordingly, despite Adams's claim to the contrary, the small claims court's order must be considered for what it is, *i.e.*, an award of damages which were incurred as a direct result of a breach of an express warranty.

[19] The small claims court found that Adams had warranted that the puppy was being sold in good condition. The small claims court determined that a breach of this warranty had occurred, finding that because the puppy suffered from an autoimmune disease which caused what appear to be significant allergy issues, the puppy had not been sold in good condition. The small claims court then awarded $1586.26 in damages to Stavropoulos for costs incurred as a direct result of the breach of that warranty. Adams does not challenge the small

claims court's determination that a breach of the warranty occurred, only the award of damages.

[20] With respect to potential damages which may be awarded following a breach of warranty, Indiana Code 26-1-2-715 provides as follows:

> (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and *any other reasonable expense incident to the … breach*.
>
> (2) Consequential damages resulting from the seller's breach include
>
>> (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
>>
>> (b) injury to person or property proximately resulting from any breach of warranty.

(Emphasis added).

[21] In the instant matter, Stavropoulos presented evidence during trial setting forth the costs she incurred as a direct result of the breach. The small claims court found this evidence to be credible and awarded damages accordingly. We cannot say that the small claims court erred in doing so. As such, we conclude that the small claims court did not err in awarding $1586.26 in damages to

Stavropoulos for costs incurred as a direct result of the breach of Adams's warranty that the puppy was being sold to Stavropoulos in good condition.

[22] The judgment of the small claims court is affirmed.

Najam, J., and Riley, J., concur.