FILED

Jul 16 2020, 9:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Gregg S. Gordon
Indianapolis, Indiana

James A. Nickloy
Noblesville, Indiana

ATTORNEY FOR APPELLEE

Casey D. Cloyd
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Lee Johnson,
*Appellant-Plaintiff,*

v.

Hassan Shanehsaz,
*Appellee-Defendant.*

July 16, 2020

Court of Appeals Case No.
19A-PL-2866

Appeal from the Hamilton
Superior Court

The Honorable David K. Najjar,
Judge

Trial Court Cause No.
29D05-1703-PL-2890

**Altice, Judge.**

# Case Summary

[1] Lee Johnson appeals the trial court's grant of summary judgment in favor of Hassan Shanehsaz, claiming that a general release that was executed in an action for unpaid wages did not release her instant claim against Shanehsaz for defamation. Johnson further contends that the trial court's award of attorneys' fees to Shanehsaz must be reversed because much of those fees were unrelated to the instant litigation. Shanehsaz cross appeals, claiming that the trial court erred in denying his request for lost profits from a failed business venture that Johnson had allegedly caused.

[2] We affirm in part, reverse in part, and remand with instructions that the trial court reduce the judgment for attorneys' fees by the amount that Shanehsaz incurred for matters wholly unrelated to this cause.

# Facts and Procedural History

[3] Johnson worked for Shanehsaz, the sole owner of the Hamilton County Convention Center, LLC (Convention Center), in 2010-11. Johnson solicited customers who were interested in renting space for various events in exchange for commissions from Shanehsaz. At some point, Johnson claimed that Shanehsaz had failed to pay her more than $10,000 in wages that were owed. Johnson resigned and filed suit against the Convention Center, Shanehsaz, and three other entities that Shanehsaz owned for the unpaid wages.

The matter proceeded to trial on November 1, 2013, and judgment was subsequently entered for Johnson in the amount of $15,408.60 in actual damages, $30,817.20 in liquidated damages, and $25,000 in attorneys' fees. This court affirmed the judgment in an unpublished memorandum decision on August 18, 2016. *Hamilton Cty. Convention Ctr., LLC v. Johnson*, No. 29A05-1509-PL-1525 (Ind. Ct. App. Aug. 18, 2016).

While the unpaid wage action was pending, Shanehsaz's brother, Ali, filed suit against Johnson in Federal Court on April 28, 2016, alleging that Johnson had stolen several Iranian notes that he had entrusted to Shanehsaz. Ali alleged that Johnson had stolen the notes when she left the Convention Center premises in November 2011, but that Shanehsaz had not learned that the notes were missing until April 2015.

Following our affirmance of the trial court's judgment in the unpaid wage action, Johnson, Shanehsaz, and the other parties to that action entered into a settlement agreement (Agreement) on August 22, 2016, that provides in relevant part:

> 6. <u>The Parties do each hereby forever release and discharge the other</u>, and their respective spouses, affiliates, successors, agents, employees, officers, directors, members, representatives, attorneys and assigns and all other persons, firms or corporations (including, without limitation, any parent, subsidiary or affiliated companies, and their respective officers, directors, employees, members and shareholders), none of whom admit any liability and all of whom dispute any liability, <u>from any and all manner of actions, causes of action, suits, accounts, contracts, debts, claims and demands whatsoever, at law or in equity, arising out of</u>

claims that that were asserted, or could have been asserted in the
Lawsuit by any of the Parties. The Parties acknowledge and
agree that the execution and performance of this Settlement
Agreement containing this mutual release and the stipulation of
dismissal are made to compromise a disputed claim, and for the
purpose of terminating dispute and litigation between the Parties
and to avoid the costs, expenses and uncertainties of litigation.
This Settlement Agreement and mutual release is not intended to
and does not constitute an admission of liability. But, this release
shall have no effect upon conduct in connection with or based
upon a federal lawsuit known as *Shanehsaz v. Johnson*, currently
pending in the U.S. District Court for the Southern District of
Indiana. . . (hereinafter the "Federal Lawsuit").[1]

*Appellant's Appendix Vol. II* at 59 (emphases added).

[7]  Pursuant to the terms of the Agreement, Shanehsaz paid Johnson $50,000 plus
the balance on a secured promissory note, and attorneys' fees and costs.
Paragraph twelve of the Agreement allows for the recovery of attorneys' fees by
a prevailing party in litigation arising from its enforcement.

[8]  During the time that Shanehsaz was paying the amounts due under the
Agreement, he engaged in discussions with Jacquie Bols about starting a new
restaurant venture.  Shanehsaz's businesses had used Jacquie's Café & Gourmet
Catering, a local catering firm, to provide food and beverages at various
functions that Shanehsaz's businesses had staged.  These events were held at

---

[1]  Ali's federal claim was dismissed on April 13, 2017.

one of Shanehsaz's banquet facilities in downtown Noblesville. Bols and Shanehsaz agreed that they would share the profits from the restaurant equally.

[9] Over the next few years, Bols conducted demographic studies in Hamilton County about the prospect of opening a new restaurant. Shanehsaz and Bols also toured one of the local restaurants to learn the layout of the kitchen and its operating procedures. Shanehsaz claimed that he had commissioned plans with an architect, engineer, and designer for redeveloping space in the facility for the new restaurant. The plan for the restaurant included revenue and profit forecasts. Bols predicted that the restaurant, which was designed to seat 400 patrons, would normally operate at a 60% capacity. She anticipated that the restaurant would gross $3 million to $4 million annually, and generate net profits from $600,000 to $800,000 per year.

[10] On March 24, 2017, Johnson filed a complaint against Shanehsaz, alleging defamation and intentional infliction of emotional distress for being wrongfully accused of stealing the aforementioned Iranian notes. Johnson claimed that Shanehsaz's communication to Ali and statements made to law enforcement officials in April of 2015 accusing her of theft were defamatory per se. Shanehsaz denied the allegations and defended the action on the grounds that the Agreement "was a release of all of [Johnson's] claims against [him], including all of those asserted in her Complaint." *Appendix Vol. II* at 50. Shanehsaz also asserted a counterclaim against Johnson and sought damages, costs, and attorneys' fees for breaching the Agreement in bringing the defamation action against him. Shanehsaz alleged that he suffered damages

from the publication of "sensitive information related to terms of the parties' settlement the parties had expressly agreed were confidential." *Appellant's Appendix* at 22. Shanehsaz's request for damages included an amount for lost profits from the restaurant venture with Bols that ultimately collapsed.

[11] The evidence showed that Bols was aware of the current defamation litigation between Shanehsaz and Johnson, and she knew that the parties had settled the unpaid wage litigation. Bols became concerned about the effect that the current defamation litigation would have on the restaurant venture. Bols eventually terminated any future planning on the project because she feared that she might be brought into the present litigation.

[12] On October 20, 2017, Johnson filed a motion for summary judgment, asserting that she was entitled to judgment as a matter of law because the Agreement did not release her defamation claim against Shanehsaz and she did not breach the Agreement by pursuing that action. More specifically, Johnson alleged that only the claims that were asserted or that could have been asserted in the unpaid wage lawsuit were released.

[13] Shanehsaz responded that the Agreement was unambiguous and barred Johnson's defamation claims. Hence, Shanehsaz maintained that summary judgment should be entered in his favor, including costs and attorneys' fees because Johnson breached the Agreement by pursuing the barred claim. Shanehsaz argued in the alternative that there was a genuine issue of material fact that precluded summary judgment for Johnson.

[14] Following a hearing, the trial court entered summary judgment for Shanehsaz, concluding that "the Settlement Agreement in the prior lawsuit is clear and unambiguous in its terms," and the claims that Johnson brought in the defamation action were barred. *Appellant's Appendix* at 22. The trial court also determined that there was no issue of material fact regarding Shanehsaz's counterclaim and entered judgment in his favor.

[15] The matter proceeded to a damages hearing on October 3, 2019, where the trial court found that Shanehsaz had expended $27,981 in attorneys' fees throughout the litigation for Johnson's breach of the Agreement and pursuing his counterclaim. A portion of that sum—$2,340—was incurred as a result of Shanehsaz's involvement as a deponent and as a prospective litigant in Ali's federal claim against Johnson. Other amounts related to his summary judgment response and discovery matters. The uncontested evidence showed, however, that approximately 1.8 hours of counsel's time that was billed to Shanehsaz was incurred for matters not related to the instant litigation, including mortgage payments and securing funds owed under the Agreement.

[16] The trial court awarded Shanehsaz $27,981 in attorneys' fees, but it declined Shanehsaz's request for damages for alleged lost profits from the failed restaurant venture with Bols. Johnson now appeals, and Shanehsaz cross-appeals, claiming that the trial court erred in denying his request for damages from the collapsed restaurant venture.

## I. Standard of Review—Summary Judgment

[17] When reviewing the grant or denial of a motion for summary judgment, our standard of review is the same as it is for the trial court. *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012). The moving party bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Gill v. Evansville Sheet Metal Works, Inc.,* 970 N.E.2d 633, 637 (Ind. 2012). A fact is material if its resolution would affect the outcome of the case, and an issue is genuine "if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Williams v. Tharp,* 914 N.E.2d 756, 761 (Ind. 2009).

[18] Summary judgment is improper if the movant fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* In determining whether summary judgment is proper, we consider only the evidentiary matter the parties have specifically designated to the trial court. *See* Ind. Trial R. 56(C), (H). We construe all factual inferences in the non-moving party's favor and resolve all doubts as to the existence of a material issue against the moving party. *Kroger Co. v. Plonski,* 930 N.E.2d 1, 4 (Ind. 2010). The fact that the parties have filed cross-motions for summary judgment does not alter our standard of review, as we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Hardy v. Hardy,* 963 N.E.2d 470, 473 (Ind. 2012).

## II. Johnson's Claims

### A. The Agreement

Johnson argues that the trial court erred in determining that the Agreement barred her claim for defamation and intentional infliction of emotional distress against Shanehsaz as a matter of law. Johnson asserts that although the Agreement provided for a general release of claims that were or could have been asserted in the unpaid wage action, it nonetheless "preserved certain claims that would otherwise be subject to the general release." *Appellant's Brief* at 7. Johnson argues that the trial court improperly "re-wrote the parties' contract" that effectively rendered a portion of the Agreement meaningless. *Id.*

We initially observe that the interpretation and construction of contract provisions are questions of law and are reviewed *de novo*. *Panther Brands, LLC v. Indy Racing League, LLC*, 126 N.E.3d 898, 904 (Ind. Ct. App. 2019), *trans. denied*. The goal of contract interpretation is to determine the parties' intent when they made a contract. *Celadon Trucking 81205., Inc. v. Wilmoth*, 70 N.E.3d 833, 839 (Ind. Ct. App. 2017), *trans. denied*. This court must examine "the plain language of the contract, read it in context and, whenever possible, construe it so as to render every word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Id.* It is presumed that all provisions were included for a purpose and when a contract contains general and specific provisions relating to the same subject, the specific provision controls. *Ryan v. Lawyers Title Ins. Corp.*, 959 N.E.2d 870, 875 (Ind. Ct. App. 2011). Settlement agreements and releases are contracts and are subject to the same rules of

interpretation. *Dulworth v. Bermudez*, 97 N.E.3d 272, 278 (Ind. Ct. App. 2018); *State v. Booher*, 935 N.E.2d 274, 278 (Ind. Ct. App. 2010). Finally, we note that construction of a written contract is generally a question of law for which summary judgment is particularly appropriate. *Kordick v. Merchants Nat'l Bank & Trust Co.,* 496 N.E.2d 119, 125 (Ind. Ct. App. 1986).

[21] In this case, the designated evidence established that Shanehsaz's alleged defamatory statements that he made to Ali and local law enforcement officials about Johnson occurred sometime in April 2015. Ali initiated his federal action nearly a year later, and the parties executed the Agreement on August 22, 2016.

[22] When Johnson executed the Agreement, she was aware of the facts that might have supported the defamation and emotional distress claims against Shanehsaz. Hence, she could have added those counts against Shanehsaz when she amended her complaint or at other times before the Agreement was executed. Moreover, had Johnson desired to preserve those claims in the Agreement, she could have expressly done so.

[23] Also, while Johnson urges that the last sentence in paragraph six of the Agreement quoted above, i.e., that the release "has no effect upon conduct in connection with or based upon [the] federal lawsuit," did not bar the defamation and emotional distress claims, there is no evidence establishing that the alleged defamatory statement amounted to "conduct" in the 2016 federal action. That lawsuit did not even exist when the alleged defamation occurred.

[24] Additionally, while Johnson asserts that the words in the Agreement stating, "in connection with or based upon a federal lawsuit," must be read to encompass acts or omissions prior to the initiation of the federal suit, that interpretation effectively destroys the language pertaining to the release of claims. Rather, a harmonious reading of the Agreement is that both the "in connection with" or "based upon" phrases set forth in the Agreement anticipates the existence of the federal litigation that is referenced. Construing those phrases in the abstract to preserve claims such as Shanehsaz's alleged defamatory statements that he made prior to the commencement of the federal litigation would simply not afford those words their plain, ordinary meanings when read in context with the federal action. That said, we agree with the trial court that the unambiguous language of the Agreement served as a general release of claims by Johnson and Shanehsaz against one another. In other words, the Agreement reserved only those claims that arose <u>after</u> the federal action commenced in 2016. Therefore, the claims that were released under the Agreement included the 2015 defamation and emotional distress allegations against Shanehsaz. As a result, we conclude that the trial court properly entered summary judgment for Shanehsaz.[2]

---

[2] Although the dissent maintains that it is without dispute that the alleged defamatory statements constituted conduct in connection with the federal lawsuit, we must conclude that the "in connection with or based upon" the federal lawsuit language in the Agreement cannot be read to encompass acts or omissions prior to the commencement of the federal litigation. The harmonious reading of the Agreement is that the language therein contemplates the existence of the referenced federal lawsuit. Put another way, to read those phrases independently to include the alleged 2015 defamation would not give those words their plain and ordinary meanings in their connection to the federal litigation.

### B. Attorneys' Fees

[25]     Johnson claims that the trial court erred in awarding $27,981 in attorneys' fees to Shanehsaz because the amount included nearly forty hours allegedly billed for items such as unnecessary discovery and Shanehsaz's unsuccessful claim for lost profits from the failed business venture. Thus, Johnson contends that the judgment for attorneys' fees must be vacated.

[26]     Because the trial court entered findings of fact and conclusions of law following the damages hearing, we apply a two-tiered standard of review:

> [W]e first determine whether the evidence supports the findings; we then determine whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, and we consider only the evidence favorable to the trial court's judgment. We also will not reassess witness credibility. The party appealing the trial court's judgment must establish that the findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. We do not defer to conclusions of law, which are evaluated *de novo*.

*New Nello Operating Co. v. LLC CompressAir,* 142 N.E.3d 508, 511-12 (Ind. Ct. App. 2020)(quoting *Koch Dev. Corp. v. Koch*, 996 N.E.2d 358, 369 (Ind. Ct. App. 2013), *trans. denied* (citations and internal quotation marks omitted)).

[27]   In this case, the trial court entered the following findings and conclusions that pertained to the attorneys' fee award:

> 33. Shanehsaz incurred attorneys' fees in fighting Johnson's attempt to make him a party in Shanehsaz' brother's federal litigation against Johnson, which attempt Johnson eventually abandoned.

> 34. Shanehsaz incurred $25,581.00 in billed, paid attorneys' fees in the federal litigation and more significantly defending Johnson's defamation claim in this litigation and prosecuting his counterclaim against her for breach of the parties' settlement agreement. Shanehsaz offered his Exhibit C, which were redacted copies of time records from Shanehsaz's attorneys. Upon Shanehsaz offering to submit unredacted copies to Johnson's attorneys, the objection was withdrawn, with the understanding that Johnson could offer further objections in her post-trial brief, if she believed certain time entries were improper.

> 35. Shanehsaz's attorney Casey D. Cloyd incurred trial preparation fees not yet billed to Shanehsaz at the time of trial of $2,400.00.

> 36. In her Post-Trial Brief, Johnson objected to Shanehsaz's attorney fees for time incurred as to the federal lawsuit between Johnson and Shanehsaz's brother, Shanehsaz's own performance under the settlement agreement, discovery between the parties as to the meaning of terms and conditions of the agreement, and

Shanehsaz's claims for lost profits as to the restaurant venture he planned with Bols.

37. Shanehsaz argues that the time spent by his attorneys working on the federal lawsuit were for the same reasons Shanehsaz defended this lawsuit and as such, those fees are properly included here. He also argued that his fees for engaging in discovery as to the meaning of terms and conditions of the agreement were reasonable as it was directed to the summary judgment motion in this case. Finally, he argues that his fees in pursuing his damages claim is reasonable and should be included.

38. The Court, having reviewed [the exhibits] and the post-trial briefs of both parties, finds that the fees claimed by Shanehsaz are reasonable and appropriate in defending this lawsuit, defending against Johnson's breach of the Settlement Agreement, and in pursuing his claims for damages.

39. The attorneys' fees Shanehsaz incurred from [his attorneys] were reasonable as to hourly rate for attorneys of their experience and skill in Central Indiana and the aggregate amount of such fees is reasonable for the nature of this litigation and for the results obtained.

. . .

Conclusions of Law

2. As previously decided, Johnson breached the parties' 2016 settlement agreement by bringing her defamation action.

3. Shanehsaz incurred damages from Johnson's breach, in the form of the attorney fees and costs related to his defense of

litigation in this case and in a federal lawsuit involving Johnson and Shanehsaz's brother. . . .

4. The harm that Shanehsaz suffered, by being subjected to a barred claim, is the kind of harm that was reasonably foreseeable when the parties negotiated their 2016 settlement agreement which included a broad general release of all then-existing claims, one of which was Johnson's defamation claim.

6. Shanehsaz incurred attorneys' fees to defend himself from Johnson's claim barred by the settlement agreement, which started with her attempt to join him into the unrelated federal litigation, but which were principally incurred by defending and prosecuting this litigation. . . .   The Court finds that the claimed fees are legitimate expenses necessary to defend this action as well as protect Shanehsaz's rights from Johnson's breach of the settlement agreement.

7. The attorneys' fees Shanehsaz incurred, $27,981.00, are a reasonable amount of attorneys' fees given the skill of Shanehsaz's lawyers, those lawyers' experience, the prevailing rates for such litigation work here in Central Indiana and the complexity of the matter.

*Appellant's Appendix* at 30-32.

[28]   Indiana trial courts have broad discretion in assessing attorney fees. *Husainy v. Granite Management, LLC,* 132 N.E.3d 486, 497 (Ind. Ct. App. 2019).  An award of attorney fees, even pursuant to a contract, must be reasonable. *Stewart v. TT Commercial One, LLC,* 911 N.E.2d 51, 58 (Ind. Ct. App. 2009), *trans. denied*.  If there is a basis for an award of attorneys' fees, that award by the trial court is reviewed for an abuse of discretion. *Patricia Ann Brown, C.P.A. v. Brown*, 776

N.E.2d 394, 397 (Ind. Ct. App. 2002), *trans. denied.* Reversal of a trial court's award of attorneys' fees is warranted "if the award is clearly against the logic and effect of the facts and circumstances before the court." *Benaugh v. Garner*, 876 N.E.2d 344, 347 (Ind. Ct. App. 2007), *trans. denied.* We also note that when a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorneys' fee reduced simply because the court did not adopt each contention raised. *Barker v. City of W. Lafayette*, 894 N.E.2d 1004, 1010 (Ind. Ct. App. 2008), *trans. denied.*

[29] In this case, Paragraph 12 of the Agreement provides that

> 12. In the event of a dispute concerning a perceived violation of the rights or responsibilities of a party to this agreement which results in a lawsuit, the prevailing party in such a lawsuit shall be entitled to recover from the party failing to fully perform thereunder all costs, expenses and reasonable attorney fees incurred by such prevailing party.

*Appellant's Appendix Vol. II* at 61.

[30] Shanehsaz's billing statements set forth the time that was billed, and Johnson's counsel does not contest the reasonableness of the charges with respect to the hourly rate, skills, and experience of the attorneys. Rather, Johnson challenges the amount of time that Shanehsaz's attorneys incurred in the instant litigation and the results that were ultimately obtained.

[31] Johnson contends that the trial court erred in awarding Shanehsaz $2,430 in attorneys' fees because those amounts were incurred prior to the

commencement of the instant litigation. Shanehsaz's counsel testified that he became aware in late 2016 that Johnson was attempting to join Shanehsaz in Ali's federal court litigation against Johnson. Hence, counsel attended Shanehsaz's December 2016 deposition in that case, and he assisted in the response to join Shanehsaz as a party.[3]

[32] The fees that Shanehsaz incurred in Ali's federal case were for substantially the same reason he defended Johnson's defamation claim. Johnson had released Shanehsaz for claims that preceded the Agreement and targeting Shanehsaz in the federal case would be a breach of the Agreement. Hence, Shanehsaz was entitled to compensation from Johnson for the expenses that he incurred in that action. As a result, the trial court did not err in awarding Shanehsaz $2430 in attorneys' fees for that breach.

[33] Johnson also appears to contend that any attorneys' fees that Shanehsaz incurred regarding Johnson's breach of the Agreement that did not directly support the trial court's judgment were not recoverable. To be sure, Shanehsaz presented his argument in the alternative: either the Agreement barred Johnson's defamation claim as a matter of law, or the designated evidence demonstrated that there was a genuine issue of material fact. Even though the trial court determined that the Agreement was unambiguous and granted his

---

[3] After the brief opposing the joinder of Shanehsaz was filed, Johnson withdrew her motion and the federal litigation was ultimately dismissed.

motion for summary judgment on this basis, it does not follow that Shanehsaz should not be compensated for his attorneys' fees because he allegedly failed to properly raise a genuine issue of material fact. Such a narrow interpretation suggests that Shanehsaz wasted his money on attorneys' fees that were not directly related to the trial court's precise reasons for entering judgment in his favor. He did not.

[34] Shanehsaz successfully defended against Johnson's defamation claim and he prevailed on his counterclaim. Therefore, he is entitled to recover attorneys' fees incurred with respect to the alternate theories that he presented to the trial court. *See, e.g., Gerstbauer v. Styers,* 898 N.E.2d 369, 380 (Ind. Ct. App. 2008) (holding that because the appellant was successful both in his defense against the action and on his counter-claim, he was the "prevailing party . . . and entitled to attorneys' fees incurred both in his defense and on his counter-claim").

[35] Finally, we note that Shaneshaz's counsel acknowledged at the damages hearing that some of the entries in the billing statements were not related to time spent in the instant litigation. Shanehsaz's counsel explained that several of the entries related to fees regarding mortgage payments and securing funds in accordance with the Agreement. Those unrelated entries accounted for 1.8 hours of the 107.7 total hours that Shanehsaz's counsel had billed. Hence, on remand, the trial court is directed to correct the judgment and reduce the attorneys' fee award by the amount that Shanehsaz paid counsel for 1.8 hours of time spent on matters that were unrelated to the instant litigation.

[36] In sum, but for the 1.8 hours in attorneys' fees that Shanehsaz incurred on matters wholly unrelated to the instant action, the record supports the trial court's award of attorneys' fees. To hold otherwise would require us to reweigh the evidence, which we will not do.

## III. Shanesaz's Cross Appeal

[37] Shanehsaz argues that the trial court abused its discretion in denying his claim for damages that represented lost profits from the failed restaurant venture that was allegedly caused by Johnson's breach of the Agreement. Shanehsaz argues that he presented sufficient evidence at the damages hearing to support such an award.

[38] We initially observe that because it was Shanehsaz's burden to prove his damages for Johnson's breach of contract, he is appealing a negative judgment. A party challenging a negative judgment generally must show on appeal that the evidence as a whole leads to a decision opposite that reached by the trial court. *Town of Brownsburg v. Fight Against Brownsburg Annexation*, 124 N.E.3d 597, 601 (Ind. 2019). Hence, we may reverse only when the evidence is uncontradicted and leads unerringly to a result different than the trial court reached. *Walters v. Dean*, 497 N.E.2d 247, 255n.2 (Ind. Ct. App.1986).

[39] The computation of damages for breach of contract is within the sound discretion of the trial court, and we will review a damage award for an abuse of discretion. *City of Jeffersonville v. Envtl. Mgmt. Corp.*, 954 N.E.2d 1000, 1015 (Ind. Ct. App. 2011), *trans. denied.* A damage award in a breach of contract

action must reference some fairly-defined standard such as cost of repair, market value, and loss of profits. *Otter Creek Trading Co., Inc. v. PCM Enviro PTY, Ltd.*, 60 N.E.3d 217, 229 (Ind. Ct. App. 2016), *trans. denied*. A loss of net profits may be recovered as consequential damages, providing the amount can be estimated with a relative degree of certainty and exactness. *Berkel & Co. Contractors, Inc. v. Palm & Assocs.,* 814 N.E.2d 649, 659 (Ind. Ct. App. 2004). The factfinder may not award damages on the mere basis of conjecture or speculation. *L.H. Controls, Inc. v. Custom Conveyor, Inc.,* 974 N.E.2d 1031, 1043 (Ind. Ct. App. 2012); *Noble Roman's Inc. v. Ward*, 760 N.E.2d 1132, 1140 (Ind. Ct. App. 2002).

[40] In this case, the trial court entered the following findings of fact and conclusions of law in denying Shanehsaz's request for damages relating to the alleged lost profits:

> 22. Bols and Shanehsaz testified that they continued their planning for the opening of [the restaurant] between 2013 and 2016. Bols testified that the plans for the restaurant did not progress beyond the discussion stage, at least on her part. Shanehsaz testified that he commissioned plans for turning a part of the Model Mill Building into a restaurant and worked with and paid architects, engineers and kitchen design engineers to submit plans to the State of Indiana for permits. No documents were submitted into evidence showing these plans or permits, nor was any evidence presented as to payments made to architects, engineers, or kitchen design engineers.

> 23. After Bols acquired another restaurant in 2016, which included a small vineyard and farm, Bols and Shanehsaz

revamped the Model Mill Building venture to offer a "farm to table" experience as part of the restaurant offering.

24. Although Bols has extensive experience in restaurants and the foodservice industry, she does not currently work in a large, upscale steak restaurant as was proposed with Shanehsaz.

25. Although Shanehsaz has helped to finance two local restaurant ventures, he does not have much experience in the food service industry.

26. The City of Noblesville does not currently have any restaurants close to the capacity proposed by Shanehsaz and Bols. The city of Noblesville does not currently have any upscale steak restaurants. Bols testified that the restaurant would be similar to a Ruth's Chris Steakhouse, which the court notes is an upscale chain steak restaurant with locations across the United States.

27. Bols, whose catering business with Shanehsaz's company began during Johnson's tenure in 2010-2011, was aware of Johnson's wage claim litigation against Shanehsaz and his related businesses and of the August, 2016 settlement agreement with Johnson settling her claims.

28. Shanehsaz settled Johnson's wage claim case so that he could proceed with the new venture with Bols as soon as possible.

29. Bols learned from Shanehsaz in March or April, 2017 that Johnson had initiated this litigation.

30. Bols had insecurity about proceeding with the . . . restaurant while this litigation with Lee Johnson was pending.

31. Bols subsequently told Shanehsaz that she did not want to go forward with finishing the . . . restaurant venture, citing to him her insecurity about their restaurant venture being dragged into Johnson's litigation against Shanehsaz similar to what happened in the wage claim litigation.

. . .

Conclusions of Law

5. Although Bols' testimony about . . . the lost net profits of her venture with Shanehsaz, based on her years as a restauranteur and caterer, was not countered by other, different testimony about the potential success or failure of such a venture, the Court finds that the evidence submitted by Bols and Shanehsaz as to the potential profits of their restaurant is speculation and conjecture and, without more, does not prove with reasonable certainty the claimed damages. *See Noble Roman's Inc. v. Ward*, 760 N.E.2d 1132 (Ind. Ct. App. 2002).

*Appellant's Appendix* at 28-30, 32-33.

[41]    Shanehsaz's argument on appeal is premised upon the notion that because he presented uncontradicted testimony at the hearing, the trial court was obligated to award him the amount claimed for lost profits. Shanehsaz's argument, however, ignores what evidence was not offered at the hearing, including documents and/or expert testimony establishing that a restaurant of this nature was even feasible for its proposed location and whether it would be profitable.

[42]    As the trial court observed, no documentary evidence such as architectural plans and designs were offered into evidence and there was no showing that

building permits had been applied for or issued. Bols testified that nothing more than discussions about the venture had occurred, no agreement had been reduced to a writing, and virtually no out-of-pocket expenditures had been made towards establishing the business. And while Bols was experienced in the food industry, she was not working in a large upscale restaurant when she and Shanehsaz were discussing plans about the venture. Moreover, Shanehsaz had very little experience in the food industry.

[43] We reject Shanehsaz's claim that the trial court "ignore[d] . . . competent, uncontroverted evidence" when considering his request for damages. *Cross-Appellant's Reply Brief* at 8. Rather, it is apparent that the trial court considered all of the evidence that was offered as set forth in its detailed findings, and it noted that the type of evidence that it deemed necessary to prove damages was lacking. We decline to reweigh the evidence, and we cannot say that the evidence as a whole leads to a decision opposite that reached by the trial court. Thus, the trial court did not abuse its discretion in denying Shanehsaz's request for damages that related to possible lost profits from the failed restaurant venture.

## III. Conclusion

[44] In light of our discussion above, we conclude that the trial court properly construed the Agreement and entered summary judgment for Shanehsaz. We also conclude that the evidence supported the award of attorneys' fees for Shaneshaz, but for the 1.8 hours of time that was billed for matters wholly

unrelated to the instant litigation.  Finally, we cannot say that the trial court abused its discretion in denying Shanehsaz's request for possible lost profits from the failed business venture.

[45]    Affirmed in part, reversed in part, and remanded with instructions that the trial court correct the judgment and reduce the attorneys' fee award by the amount that Sanchez incurred for matters wholly unrelated to this cause.

Bailey, J., concurs.

Crone, J., dissents with opinion.

| | |
|---|---|
| Lee Johnson, | Court of Appeals Case No. |
| *Appellant-Plaintiff,* | 19A-PL-2866 |
| v. | |
| Hassan Shanehsaz, | |
| *Appellee-Defendant.* | |

**Crone, Judge, dissenting.**

[1] I respectfully dissent. As the majority acknowledges, "when a contract contains general and specific provisions relating to the same subject, the specific provision controls." Slip op. at 9 (citing *Ryan*, 959 N.E.2d at 875). And, "whenever possible," we construe a contract "so as to render every word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Id*. (quoting *Celadon Trucking*, 70 N.E.3d at 839).

[2] Paragraph six of the Agreement contains a general provision that mutually releases Johnson and Shanehsaz "from any and all manner of actions … arising out of claims that were asserted, or could have been asserted in [Johnson's unpaid wage lawsuit against Shanehsaz] by any of the Parties." Appellant's App. Vol. 2 at 59. But it also specifically provides that the release "shall have no effect upon conduct in connection with or based upon" Ali's federal lawsuit

against Johnson for allegedly stealing Iranian promissory notes, which was pending when the Agreement was signed. *Id*. In my view, it cannot reasonably be disputed that Shanehsaz's allegedly defamatory statements to Ali regarding Johnson's alleged theft of the notes constitute "conduct in connection with" the federal lawsuit.[4] Consequently, the Agreement's general release provision does not bar Johnson from bringing an action against Shanehsaz for defamation and emotional distress based on that conduct. The majority's contrary holding allows the general release provision to trump the specific exception to that provision and renders that exception meaningless. Based on my interpretation of the Agreement, which harmonizes its provisions and renders every word and phrase meaningful, I would reverse the trial court's rulings in favor of Shanehsaz and remand for further proceedings.

---

[4] In concluding otherwise, the majority reads "in connection with" out of the Agreement.